**No. 2024-1345**

# United States Court of Appeals for the Federal Circuit

FINTIV, INC.,
Appellant,

v.

APPLE INC.,
Appellee.

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Proceeding No. IPR2022-00976

**BRIEF OF APPELLEE**

Douglas H. Hallward-Driemeier
Fan Zhang
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Phone: (202) 508-4600

Cassandra B. Roth
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone: (212) 596-9000

James L. Davis, Jr.
James R. Batchelder
Christopher M. Bonny
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone: (650) 617-4000

*Counsel for Appellee Apple Inc.*

Representative claim 1 of U.S. Patent No. 9,892,386 provides:

1. A monetary transaction system for conducting monetary transactions between subscribers and other entities, the system comprising one or more of:

an integration tier operable to manage mobile wallet sessions, the integration tier also including a communication application programming interface (API) and other communication mechanisms to accept messages from channels;

notification services operable to send notifications through different notification channels including one or more of short message peer-to-peer, short-message services and simple mail transfer protocol emails;

business process services operable to implement business workflows, including at least one of executing financial transactions, ***auditing financial transactions***, invoking third-party services, handling errors, and logging platform objects;

database services operable to store financial transaction details, store customer profiles, and manage money containers;

a payment handler service operable to use APIs of different payment processors including one or more APIs of banks, credit and debit cards processors, bill payment processors;

a rules engine operable to gather financial transaction statistics and use the gathered financial transaction statistics to enforce constraints including transaction constraints;

a security service operable to perform subscriber authentication;

at least one entity that is to be involved in the specified transaction, the at least one entity having a profile with the monetary transaction system: wherein the at least one entity is the agent;

***wherein the monetary transaction system is implemented to deposit funds at an agent branch***, the funds being deposited by a subscriber at the agent branch using a mobile device configured to run a monetary

transaction system application, the monetary transaction system performing the following steps:

receiving a communication message from the mobile device over one of a plurality of channels connected to the monetary transaction system, the communication message being received by an API associated with the integration tier of the monetary transaction system, the communication message indicating that ***the subscriber desires to deposit a specified amount of funds into the subscriber's account***;

validating the status of the subscriber's account, wherein validating the status of the subscriber's account comprises communicating from the integration tier to the database services to query attributes of the subscriber's account;

committing a pending transaction through the business process services, wherein the integration tier communicates a transaction commitment request to the business process services;

receiving a confirmation from the business process services that the pending transaction has been committed;

sending, through the notification services, a receipt notification to the mobile device; and

upon receiving a confirmation of commitment from the business process services, committing the pending transaction to the database services; and

wherein committing the pending transaction further comprises the following steps as orchestrated by the business process services:

ensuring, via the database services, that the subscriber has an active account;

validating, through communication with the security services, one or more of a PIN number and an access control list;

applying with the rules engine, velocity rules;

creating with the database services a new pending transaction history record;

> holding funds from the agent account balance using the payment handler,
>
> loading the funds to the subscriber account using the payment handler; and
>
> updating, using the database services, a pending transaction history record to reflect the funds.

Appx154-155 (emphases added).

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1345

**Short Case Caption** Fintiv, Inc. v. Apple Inc.

**Filing Party/Entity** Apple Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/15/2024

Signature: /s/ James L. Davis, Jr.

Name: James L. Davis, Jr.

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Andrew S. Ehmke, Haynes and Boone, LLP | Michael S. Parsons, Haynes and Boone, LLP | Jonathan R. Bowser, Haynes and Boone, LLP |
| Angela Oliver, Haynes and Boone, LLP | Eugene Goryunov, Haynes and Boone, LLP | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


CERTIFICATE OF INTEREST .......... iv

TABLE OF AUTHORITIES .......... x

STATEMENT OF RELATED CASES .......... xii

INTRODUCTION .......... 1

STATEMENT OF THE ISSUES .......... 3

STATEMENT OF THE CASE .......... 4

- I. The Patent and Claims at Issue .......... 4
  - A. The ’386 Patent Discloses Verifying Transaction Information to Determine Whether the Transaction May Proceed .......... 6
  - B. The ’386 Patent Discloses a Subscriber Depositing Funds into the Subscriber’s Account .......... 7
- II. The Prior Art .......... 8
  - A. The Prior Art Discloses Verifying Transaction Information to Determine Whether the Transaction May Proceed .......... 8
  - B. The Prior Art Discloses that the Sender Depositing Funds Into An Account Can Also Be the Recipient of the Funds .......... 9
- III. The Board Held All Challenged Claims Unpatentable .......... 10
  - A. The Board Rejected Fintiv’s Proposed “Retrospective” Construction for “Auditing Financial Transactions” in Favor of Its Ordinary and Customary Meaning .......... 10
  - B. The Board Determined That All Challenged Claims Were Unpatentable as Obvious over Dill and Other Prior Art .......... 14

SUMMARY OF THE ARGUMENT ....................16

ARGUMENT ....................19

I. Standard of Review ....................19

II. The Board Correctly Construed "Auditing Financial Transactions"..20

A. Consistent with Its Ordinary and Customary Meaning, "Auditing Financial Transactions" Means "Official Examination of Financial Transactions"....................20

1. The Board's Construction Is Supported by the Intrinsic Evidence ....................20

2. The Board's Construction Is Also Supported by the Extrinsic Evidence in Light of the Intrinsic Evidence ...22

B. Fintiv's New Arguments that the Board's Construction Is Overbroad Are Meritless....................26

1. Fintiv's Overbreadth Arguments Amount to the Same Meritless Attempt to Inject a "Retrospective" Requirement that the Board Already Properly Rejected as Unsupported by the Record ....................27

2. Fintiv's Arguments Seeking to Limit the "Auditing" Term to Examining Only Financial Transactions "In Accounts" Are Inconsistent with the Intrinsic and Extrinsic Evidence ....................28

III. Substantial Evidence Supports the Board's Factual Finding that Dill Discloses "Auditing Financial Transactions," and Fintiv's Arguments to the Contrary Are Forfeited....................33

A. Fintiv Forfeited Its Arguments that Dill Does Not Disclose "Auditing Financial Transactions" ....................35

B. Even if Not Forfeited, Fintiv's Arguments Fail to Undermine the Substantial Evidence Supporting the Board's Factual Finding that Dill Discloses Official Examination of Financial Transactions ....................37

IV. Substantial Evidence Supports the Board's Factual Finding that Dill Discloses the Claimed Deposit Transaction........................................41

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................47

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Radio LLC v. Qualcomm Inc.*,
578 F. App'x 975 (Fed. Cir. 2014) ....................31

*Apple Inc. v. MPH Techs. Oy*,
28 F.4th 254 (Fed. Cir. 2022) ....................39

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) ....................39, 44

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016) ....................47

*In re Chapman*,
595 F.3d 1330 (Fed. Cir. 2010) ....................20

*In re Cuozzo Speed Techs., LLC*,
793 F.3d 1268 (Fed. Cir. 2015) ....................20

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................28

*Honeywell Int'l, Inc. v. United States*,
609 F.3d 1292 (Fed. Cir. 2010) ....................39, 44

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*,
401 F.3d 1367 (Fed. Cir. 2005) ....................40

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014) ....................30, 31

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002) ....................20

*Knowles Elecs. LLC v. Cirrus Logic, Inc.*,
883 F.3d 1358 (Fed. Cir. 2018) ....................*passim*

*Merck & Co. v. Teva Pharms. USA Inc.*,
395 F.3d 1364 (Fed. Cir. 2005) ....................37

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008) ....................46

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) ....................35, 36

*Personalized Media Commc'n, LLC v. Apple Inc.*,
952 F.3d 1336 (Fed. Cir. 2020) ....................32

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................32, 33, 34

*Ring Plus, Inc. v. Cingular Wireless Corp.*,
614 F.3d 1354 (Fed. Cir. 2010) ....................21

*TQ Delta, LLC v. Cisco Sys.*,
942 F.3d 1352 (Fed. Cir. 2019) ....................32

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ....................29, 31

**STATUTES**

5 U.S.C. § 706 ....................20

## STATEMENT OF RELATED CASES

Apple's counsel is unaware of any related proceedings within the meaning of Federal Circuit Rule 47.5(a)(1).

Pursuant to Federal Circuit Rule 47.5(a)(2), Apple states that *Fintiv, Inc. v. PayPal Holdings, Inc.*, Case No. 23-2312 (Fed. Cir.) may directly affect or be directly affected by this Court's decision in this appeal. That case, which appealed from the United States District Court for the Western District of Texas, Case No. 6-23-cv-0049-ADA, is currently pending in this Court and involves the same claims of the same patent at issue in this appeal (U.S. Patent No. 9,892,386), among other related and unrelated patents.

# INTRODUCTION

This appeal concerns whether the Board correctly chose to reject Patent Owner Fintiv's attempt to add an unsupported temporal restriction to a claim term ("auditing financial transactions" or "auditing" term) when the Board construed the term according to its ordinary and customary meaning, and whether substantial evidence supports the Board's factual findings underlying its determinations that all challenged claims (claims 1-3) of the '386 patent are unpatentable as obvious over Dill and other art.

The claim construction dispute boils down to whether the Board's ordinary and customary construction of "auditing financial transactions"—the "official examination of financial transactions"—should include an additional temporal restriction that limits examination to occurring ***only after*** financial transactions are fully complete and residing "***in accounts***," as Fintiv now advocates based solely on extrinsic evidence. The Board already considered a similar temporally-limited construction proposed by Fintiv below—which restricted auditing to a type of "***retrospective***" examination—and properly rejected it as unsupported by the intrinsic and extrinsic evidence.

In apparent acceptance of the Board's reasoning, Fintiv no longer urges adoption of its old "retrospective" construction on appeal. Instead, Fintiv now seeks to reinject the same unsupported requirement through a different construction—by

arguing, in various ways, that the Board's construction is overbroad because it is not temporally limited to examining financial transactions "in accounts." These arguments fail for two independent reasons: (1) they are merely attempts to revive Fintiv's prior "retrospective" construction that the Board properly rejected; and (2) they raise a new accounting-specific construction that is now forfeited, and otherwise imposes a new "in accounts" limitation that is inconsistent with the intrinsic evidence and turns on disagreements with the Board's factual determinations regarding extrinsic evidence that should be affirmed as supported by substantial evidence.

The remaining disputes relate to the substantial evidence supporting the Board's factual findings that Dill discloses two limitations recited in all appealed claims: (1) the aforementioned "auditing" term under the Board's construction, and (2) another limitation requiring a subscriber to deposit funds into the subscriber's ***own*** account—dubbed the "deposit transaction." The Board's factual findings are supported by express disclosures in Dill and credited testimony from Apple's expert, and Fintiv's arguments to the contrary are either forfeited or meritless factual disputes that do not undermine the reasonableness of the Board's findings.

The Court should affirm the Board's unpatentability determination for all appealed claims.

## STATEMENT OF THE ISSUES

Apple provides the following counter-statement of issues:

1. Whether the Board correctly determined that the ordinary and customary meaning of "auditing financial transactions" does not require that auditing be limited to only retrospective examinations of financial transactions "in accounts."

2. Whether Fintiv forfeited its arguments disputing Dill's disclosure of "auditing financial transactions" under its ordinary and customary meaning of "official examination of financial transactions," and if not, whether substantial evidence supports the Board's finding that the claim term is met by Dill's verification of a transaction identifier to determine whether the transaction may proceed.

3. Whether substantial evidence supports the Board's finding that Dill discloses the claimed "deposit transaction" requiring a subscriber to deposit funds into the subscriber's ***own*** account where Dill discloses that the entity depositing funds can also be the recipient of the funds.

## STATEMENT OF THE CASE

On May 16, 2022, Apple requested *inter partes* review (IPR) of all claims (independent claims 1-3) of U.S. Patent No. 9,892,386 ("the '386 patent") on grounds that all three claims were obvious over U.S. Patent Application Publication No. 2009/0265272 ("Dill") and other prior art. Appx358. In its Final Written Decision, the Board determined that all challenged claims 1-3 were unpatentable as obvious based on Apple's requested grounds. Appx86. In particular, the Board relied on Dill to disclose the two claim terms at issue on appeal: "auditing financial transactions" (Appx37-38, Appx62-64), and the claimed deposit transaction (Appx41-42, Appx49-55).

### I. The Patent and Claims at Issue

The '386 patent titled "Monetary Transaction System," generally relates to a "monetary transaction system for conducting monetary transactions between transaction system subscribers and other entities." Appx89 (Abstract). As shown below, Figure 2 of the '386 patent illustrates an "example embodiment of a monetary transaction system." Appx140 (2:37-38).




FIG. 2

Appx95 (Fig. 2). To perform a monetary transaction, a "subscriber," who has a "profile" with the "monetary transaction system," interfaces with an application on the subscriber's mobile device to indicate "one or more specified transactions" to be performed by the monetary transaction system. Appx141 (3:48-53). For example, the patent discusses performing a variety of transactions with the subscriber's "mobile wallet," such as "adding a bank or credit union account to a mobile wallet," "depositing funds in a mobile wallet," and "withdrawing funds from a mobile wallet." Appx141 (4:1-7).

### A. The ’386 Patent Discloses Verifying Transaction Information to Determine Whether the Transaction May Proceed

Regarding the “auditing” term at issue, the patent discusses that the monetary transaction system supports a variety of “business workflows, including executing financial transactions, ***auditing financial transactions***, invoking third-party services, handling errors, and logging platform objects.” Appx146 (13:25-29). It is undisputed that this is the only place the “auditing” term appears in the specification, which is nearly identical to the claim language. *See* Blue Br. 7; Appx18 (Final Written Decision); Appx868 (28:13-17) (oral hearing). Though the patent does not explicitly define how financial transactions are “audit[ed],” it discusses validating a transaction before completing it. For example, the patent discusses that the monetary transaction system “determine[s] whether the transaction is permissible based on data indicated in the subscriber’s profile.” Appx141 (3:54-58). According to the patent, the “profile” includes the “subscriber’s K[now] Y[our] C[ustomer] information,” which is used to “verif[y]” the subscriber’s “identity.” Appx146 (14:33-35); Appx154 (29:44-56). The profile also includes the subscriber’s “associated bank accounts, credit union accounts, bill pay accounts or other accounts.” Appx146 (14:33-36).

### B. The '386 Patent Discloses a Subscriber Depositing Funds into the Subscriber's Account

The so-called "deposit transaction," as coined by Fintiv and used by the Board (Blue Br. 32, Appx49-55), refers to the claim requirement that a "subscriber" "deposit funds" to the subscriber's own account. Though the exact phrase "deposit transaction" does not appear in the claims, this requirement comes from two limitations: (1) "wherein the monetary transaction system is implemented to ***deposit funds*** at an agent branch" (Appx155 (31:22-23)) and (2) "the communication message indicating that the ***subscriber desires to deposit*** a specified amount of ***funds into the subscriber's account***" (Appx155 (31:33-35)).

In relation to this "deposit transaction" term, the patent describes a subscriber depositing funds into his/her own mobile wallet account by making a "deposit" at a ***third-party*** agent branch. Appx151 (23:55-67), Appx109 (Fig. 14). As part of this process: (1) the "subscriber informs the agent that they want to deposit a specified amount of cash," (2) the "agent takes the cash and notifies the monetary transaction system" of the desired deposit (e.g., using the agent's point of sale system or the agent's own mobile wallet application), and (3) the monetary transaction system credits the subscriber's mobile wallet account. Appx151 (23:55-67).

## II. The Prior Art

### A. The Prior Art Discloses Verifying Transaction Information to Determine Whether the Transaction May Proceed

Dill, titled "Money Transfers Utilizing a Unique Receiver Identifier," discusses methods and systems "for financial transfers utilizing a unique identifier to facilitate flexible payment options for the transaction." Appx2921 (Abstract). For example, Dill discloses that "a sender 105 can initiate a transaction to transfer money to a recipient 110" at a "mobile wallet application" using the "services of the money transfer facilitator 140." Appx2931 (¶ 5), Appx2936 (¶ 51).

Dill discloses completing a money transfer once the money transfer facilitator verifies the legitimacy of the transaction. Specifically, Dill discloses that to "support[] a money transfer transaction," a "money transfer facilitator" "receive[s] and verif[ies]" a "transaction identifier for a previously initiated money transfer transaction at a mobile wallet application." Appx2934-2935 (¶¶ 40-41). The "transaction identifier can be assigned or chosen for a transfer transaction." Appx2942 (¶ 105). "In response to verifying the transaction identifier, the application of the money transfer facilitator can send a recipient identifier to the mobile wallet application." Appx2934-2935 (¶ 41). The recipient then uses that identifier to "request" the "money transfer to an account" that is associated with a "mobile wallet application." Appx2921 (Abstract).

Another prior art reference, U.S. Patent No. 9,147,184 (the "'184 reference"), specifically characterizes such contemporaneous verification of the transaction's legitimacy, before it is allowed to be completed, as an "audit." Appx3422 (5:27-34). As the '184 reference states, "[p]ayment authorization may involve an audit," and "[t]he results of the audit can be . . . used, for example, as indication that the transaction can go forward (e.g., validation regarding the transaction amount and source)." *Id.*

### B. The Prior Art Discloses that the Sender Depositing Funds Into An Account Can Also Be the Recipient of the Funds

Once the sender's transaction is verified, Dill discloses a broad set of "delivery options" for delivering money to the recipient. Appx2942 (¶ 101). Like the '386 patent, these options include "delivering funds to a bank account of a recipient," "delivering funds to a funds withholding system," "delivering funds to a third party," and "making funds available for pick up at an agent location." *Id.* In the background section, Dill also notes that "[t]hird party money transfer services" are used "extensively" to transfer money using "wire transfers" and "money orders," which "typically" involve "deposit[ing]" money with a "third party" in person. Appx2931 (¶ 3).

Dill imposes no limits on whom the sender and recipient of a transaction are. As Dill broadly contemplates, "[i]t should be noted that the names sender and recipient are used only to illustrate a particular entity's and/or device's function at a

given time and are not intended to imply any limitations on the functions that can be performed by a given entity and/or device. That is, ***any given entity and/or device associated with that entity can alternately act as sender or recipient***." Appx2936 (¶ 52) (emphasis added). As such, Dill expressly contemplates a scenario where a sender delivers money into an account of a recipient where the sender and recipient are the same entity.

## III. The Board Held All Challenged Claims Unpatentable

### A. The Board Rejected Fintiv's Proposed "Retrospective" Construction for "Auditing Financial Transactions" in Favor of Its Ordinary and Customary Meaning

During the IPR proceedings below, the parties disputed the "auditing" portion of the term "auditing financial transactions." The meaning of the rest of the "auditing" term—"financial transactions"—was never in dispute. *See* Appx357 (Petition); Appx575-576 (Institution Decision); Appx667-668 (POR); Appx722-724 (Reply); Appx761-762 (Sur-Reply); Appx851 (11:20-21), Appx871-872 (31:22-32:9) (oral hearing). Whereas Apple maintained that auditing should be given its plain and ordinary meaning, Fintiv insisted that the word auditing meant "retrospective inspection and verification." *Id.* Specifically, Fintiv's goal was to exclude Dill's disclosure relating to auditing a transaction in progress—as opposed to one that had already been completed. Appx667-668 (POR); Appx761-762 (Sur-Reply); Appx871-872 (31:24-32:1, 32:10-16) (oral hearing).

As such, Fintiv argued that the full claim term "auditing financial transactions" should be construed as "performing ***retrospective*** inspection and verification of financial transactions," leaving the "financial transactions" part of the claim term untouched. Appx667-668 (POR) (emphasis added). Fintiv's argument cited no support from the intrinsic record and relied solely on extrinsic evidence. *Id.* Namely, the primary basis for Fintiv's proposed construction was a single excerpt from a textbook titled "*Auditing: Principles and Techniques*" setting forth various definitions in the context of accounting. Appx667 (POR) (quoting Appx3826). For example, the first sentence of Fintiv's cited excerpt states that the "dictionary meaning of audit" is the "official examination of accounts." Appx3826. The textbook excerpt also includes other accounting-specific definitions. For example, in its Patent Owner Response, Fintiv focused on a definition of "auditing" proposed by a "leading American accountant" and language summarizing various accounting-specific definitions. *Id.*

Critically, nothing in Fintiv's cited textbook excerpt mentions a "retrospective" requirement for which Fintiv advocated. Appx3826. Nor does Fintiv's expert (Dr. Shamos) explain why a temporal (retrospective) restriction is required by the textbook excerpt. *See* Appx3788-3790 (¶¶ 46-48) (Shamos Decl.); Appx667-668 (POR). To the contrary, when left to explain what "auditing" means in his own words, Dr. Shamos's definition of "auditing" includes no such temporal

restriction, focusing instead on the function of validating a transaction's legitimacy, rather than when this validation is performed. As Dr. Shamos acknowledged, a person of ordinary skill in the art (POSITA) "would understand the plain and ordinary meaning of 'auditing' a transaction to be independently reviewing the transaction for validity to ensure that it is legitimate." Appx3788 (¶ 46) (Shamos Decl.). Nothing precludes a transaction from being reviewed for validity while it is still ongoing.

In the Petitioner's Reply, Apple maintained that "auditing financial transactions" should be given its "plain and ordinary meaning." Appx722-724. As Apple pointed out, nothing in the claims, specification, or Fintiv's-cited textbook excerpt required the "auditing" term to be "retrospective." Appx722-723. To the contrary, Apple contended that a POSITA would not have understood "auditing" to be temporally limited, citing a prior art reference (the '184 reference) stating: "***Payment authorization may involve an audit,*** which may include comparing data from one or more of a buyer-based audit, seller-based audit or an audit based upon a third party operating the central/integrated processor. ***The results of the audit can be provided to the selected networks and used, for example as indication that the transaction can go forward*** (e.g., validating regarding the transaction amount and source)." Appx724 (quoting Appx3422 (5:27-34) ('184 reference); citing

Appx3230-3231 (¶¶ 29-30) (Houh Suppl. Decl.)) (bolding applied by Apple; italics added).

In its Sur-Reply, Fintiv reiterated its position that "auditing" must be retrospective, but did not explain how or why any language in its cited textbook required such a temporal limitation. Appx761-762.

In its Final Written Decision, the Board agreed with Apple that "auditing financial transactions" should be given its "ordinary and customary meaning." Appx19. The Board rejected Fintiv's "temporal restriction" as lacking support in the intrinsic record. Appx18. As the Board explained, the claim term "auditing financial transactions" appears just "once in the specification," and this "single instance … provides little, if any guidance because it merely repeats 'auditing financial transactions' verbatim." *Id.* Thus, there was an "absen[ce]" of a "clear indication in the intrinsic record" that the "auditing" term "should be limited" temporally. *Id.*

As such, the Board turned to the extrinsic evidence for guidance. The Board considered the extrinsic record, including Fintiv's cited textbook, Apple's cited '184 reference, and testimony from both parties' experts. *See* Appx16-19 (citing Appx3826 (textbook); Appx3422 (5:27-34) ('184 reference); Appx3788-3790 (¶¶ 46-48) (Shamos Decl.); Appx3229-3231 (¶¶ 25, 28-30) (Houh Suppl. Decl.)). The Board noted that Fintiv's textbook did "not support interjecting a temporal

requirement," because nothing in the textbook "dictate[d] that the function of 'auditing' must be performed retrospectively." Appx19. The Board also noted that the textbook stated that the "dictionary meaning" of "audit" (referring to the first word of the claim term) was "official examination of accounts." *Id.*

Ultimately, "upon weighing all the evidence bearing on the construction" of the "auditing" term, the Board construed "auditing financial transactions" to have the "ordinary and customary meaning" of "official examination of accounts." Appx19. This construction replaced the disputed "auditing" term with "official examination" and left "financial transactions," which the parties did not dispute, untouched.

### B. The Board Determined That All Challenged Claims Were Unpatentable as Obvious over Dill and Other Prior Art

The Board found that Dill discloses the two limitations at issue on appeal: (1) "auditing financial transactions" (Appx37-38, Appx62-64) and (2) the claimed deposit transaction requiring a subscriber to deposit funds into the subscriber's ***own*** account (Appx41-42, Appx49-55).

The Board concluded that Dill teaches "auditing financial transactions" under its "ordinary and customary meaning" of "official examination of financial transactions" by disclosing a "money transfer facilitator" that "verif[ies] a transaction." Appx63-64 (citing Appx2934-2935 (¶ 41), Appx2942 (¶ 105) (Dill)). In particular, the Board pointed to Dill's disclosure of a "money transfer facilitator"

that "receives and verifies [a] transaction identifier," and "in response to the verifying the transaction identifier," proceeds to complete the rest of the verified transaction. Appx64 (citing Appx2934-2935 (¶ 41)). As noted by the Board, Dill's "transaction identifier is "assign[ed]" to "a transaction" and may also be used for other purposes, such as "identify[ing] sender 105, recipient 110, or both," and "determin[ing] delivery of the [money] transfer." Appx64 (citing Appx2942 (¶ 105) (Dill)).

Additionally, the Board found that Dill discloses the claimed deposit transaction requiring a subscriber to deposit funds into his/her ***own*** account. Appx49-55. The Board found that Dill discloses a sender that initiates a money transfer to a recipient using a mobile wallet application using one of many "delivery options," including "delivering funds to a funds withholding system." Appx53 (citing Appx2926 (Fig. 5, step 515), Appx2931 (¶¶ 3, 10), Appx2939 (¶ 77) (Dill)). The Board concluded that this disclosure taught "depositing funds" into an account, as claimed, explicitly "credit[ing]" testimony from Apple's expert (Dr. Houh) that the funds delivered to the withholding system were "transferred to an account." Appx53 (citing Appx2931 (¶ 3), Appx2942 (¶ 101) (Dill); Appx2839 (¶ 131) (Houh Decl.)). Though Fintiv disputed that this disclosure taught that the account belonged to the same subscriber making the deposit, the Board rejected this argument in light of express language from Dill that "contemplates a deposit transaction where the

sender and the recipient are the same party." Appx52-53 (citing Appx2942 (¶ 101) (Dill)).

Based on the above findings, among others, the Board held all challenged claims (claim 1-3) of the '386 patent to be unpatentable as obvious over Dill in view of other prior art. Appx86. Fintiv now appeals from the Board's decision.

## SUMMARY OF THE ARGUMENT

The Court should affirm the Board's (1) construction of "auditing financial transactions," (2) factual finding that Dill discloses the "auditing" term, and (3) factual finding that Dill discloses the claimed "deposit transaction."

The Board properly construed "auditing financial transactions" to have the ordinary and customary meaning of "official examination of financial transactions" in accordance with the intrinsic evidence and extrinsic evidence. In doing so, the Board declined to adopt Fintiv's baseless construction limiting the "auditing" term to only "retrospective" examinations. Fintiv does not dispute that there is no intrinsic support for its "retrospective" construction. Nor does it expressly press the Court to adopt its prior construction that the Board properly rejected. Instead, in apparent acceptance that its "retrospective" construction cannot win, Fintiv now seeks to accomplish the same aim through different means—by repackaging the same unsupported temporal limitation in a new construction that requires auditing to be performed only on financial transactions already "in accounts." In particular,

Fintiv now argues that the Board's construction is overbroad because it: (1) is not limited to examining financial transactions "in accounts" based purportedly on select language in a single piece of extrinsic evidence (Blue Br. 16-21), and (2) lacks record support allowing auditing to be performed "before" the financial transactions are "in an account" (*id.* 21-24). These arguments imposing a new "in accounts" limitation fail for at least two reasons. First, though Fintiv styles these as two separate arguments, they collapse into the same attempt to impose the "retrospective" requirement that the Board already properly rejected as having no support in either the intrinsic or extrinsic evidence, and thus fail for the same reasons. Second, to the extent Fintiv is proposing a new construction of "auditing financial transactions" that is limited to an accounting-specific context, that construction is forfeited and fails on the merits. At best, this new construction is inconsistent with the intrinsic evidence, and ultimately disputes the Board's factual findings regarding extrinsic evidence (the sole basis for the "in accounts" language)—which should be affirmed as supported by substantial evidence. The Court should not indulge Fintiv's attempts to revive its prior losing construction and should affirm the Board's construction.

The remaining two issues on appeal involve the Board's factual findings that Dill discloses the two claim terms at issue—"auditing financial transactions" and "deposit transaction"—which the Court should affirm as supported by substantial evidence. With respect to the "auditing" term, the Board reasonably concluded that

Dill's discussion of a money transfer facilitator verifying a transaction using a transaction identifier teaches an "official examination of financial transactions" under the ordinary meaning of the "auditing" term. All of Fintiv's arguments to the contrary (Blue Br. 24-32) are forfeited because they could have been, but were not, raised below. In any event, they lack merit. First, Fintiv's argument that the Board improperly conflated the term "***auditing*** financial transactions" with the term "***executing*** financial transactions" (Blue Br. 25-27) is wrong, as the Board separately evaluated each term and found they were separately met by Dill's ***verification*** of a transaction identifier and Dill's ***delivery*** of funds, respectively. Second, Fintiv again seeks to revive its properly rejected "retrospective" construction by arguing that Dill's verification cannot satisfy the "auditing" term because the verification is performed during, not ***after***, the transaction is complete (i.e., Dill's verification process is not ***retrospective*** examination). Blue Br. 24-25, 27-30. But the Board's construction of the "auditing" term is not temporally limited (as the Board properly determined), and thus this argument falls flat. Third, Fintiv's argument that Dill does not disclose the claimed "financial transactions" in plural form (Blue Br. 30-32) fails because it ignores the context of Dill, which makes clear that the relied-upon disclosure for the "auditing" term repeats for multiple transactions.

With respect to the "deposit transaction" term, the Board found that: (1) Dill discloses a sender that deposits funds into an account of a recipient, and (2) Dill

expressly contemplates the sender and recipient being the same entity. Fintiv does not dispute the first point, and its arguments against the second do not pass muster. Fintiv points to various discussions in Dill that purportedly treat the sender and recipient as different entities (Blue Br. 33-34), but they are exemplary and do not preclude the application of Dill's broad language expressly them to be the same entity. Fintiv's other arguments (Blue Br. 32, 35-39) at best amount to disagreements with the Board's factual determinations that should be affirmed as supported by substantial evidence, including Dill's express language and testimony from Apple's expert.

In sum, the Board correctly construed "auditing financial transactions" according to its plain and ordinary meaning, and substantial evidence supports the Board's factual findings that Dill discloses the claimed "auditing financial transactions" and the claimed "deposit transaction." The Court should thus affirm the Board's unpatentability determinations as to all appealed claims.

## ARGUMENT

### I. Standard of Review

The Board's claim construction is reviewed *de novo*, and underlying findings concerning extrinsic evidence, such as "expert testimony, dictionaries, and treatises," amount to factual determinations that are reviewed for substantial evidence. *Knowles Elecs. LLC v. Cirrus Logic, Inc.*, 883 F.3d 1358, 1362 (Fed. Cir.

2018); *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279-80 (Fed. Cir. 2015), *aff'd sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016).

The factual findings underlying the Board's conclusions of obviousness are reviewed for substantial evidence. *See, e.g.*, *In re Cuozzo*, 793 F.3d at 1280; *In re Chapman*, 595 F.3d 1330, 1336-37 (Fed. Cir. 2010); 5 U.S.C. § 706.

"Substantial evidence means such 'relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Knowles Elecs.*, 883 F.3d at 1362. "If the evidence in record will support several reasonable but contradictory conclusions," the Court "will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

## II. The Board Correctly Construed "Auditing Financial Transactions"

### A. Consistent with Its Ordinary and Customary Meaning, "Auditing Financial Transactions" Means "Official Examination of Financial Transactions"

The Board correctly construed "auditing financial transactions" to be the "official examination of financial transactions" consistent with the intrinsic and extrinsic evidence and the ordinary and customary meaning of the term. Appx18-20.

#### 1. The Board's Construction Is Supported by the Intrinsic Evidence

The intrinsic record supports the Board's determination that the "auditing" term is not limited to "retrospective" examinations, as Fintiv argued below. *See*

Appx18-20 (Final Written Decision); Appx667-668 (POR); Appx761-762 (Sur-Reply). Specifically, the Board concluded—and Fintiv has never disputed—that there is nothing in the claim language, specification, or prosecution history that provides any basis for Fintiv's "retrospective" requirement. Appx18; Appx868 (28:14-17) (oral hearing). As the Board accurately stated (and Fintiv does not refute), the phrase "auditing financial transactions" appears only once in the specification, which merely recites the claim language in which it appears. Appx18; *compare* Appx146 (13:25-29) (specification) with Appx154-155 (claim 1). Thus, the Board correctly "decline[d] to impose any temporal restriction" on the "auditing" term as unsupported by the intrinsic evidence. Appx18. *See Ring Plus, Inc. v. Cingular Wireless Corp.*, 614 F.3d 1354, 1364-65 (Fed. Cir. 2010) (rejecting patentee's attempt to add a temporal requirement into the construction of the term "sound presentation" because patentee "fails to identify any portion of the specification that limits" the "plain meaning" of the claim term).

The intrinsic record also supports the Board's construction of the "auditing" term as not confined to the accounting context, as Fintiv narrowly suggests through its proposed "in accounts" requirement (Blue Br. 16-24). The claim language makes clear that the proper context of "auditing" is "financial transactions" generally, not "accounts" (as Fintiv contends, relying on its accounting-specific "dictionary" excerpt (Appx3826)). Nor does the '386 patent limit auditing to the accounting

context or examining only financial transactions that are "in accounts." The specification does not discuss accounting—the word "accounting" does not even appear. Rather, the specification broadly mentions "auditing financial transactions" as one of many "business workflows" supported by the monetary transaction system, including similarly generic activities such as "invoking third-party services, handling errors, and logging platform objects." Appx146 (13:25-29). Indeed, Fintiv's own proposed construction below—"performing retrospective inspection and verification of ***financial transactions***" (Appx667-668 (POR))—supports the Board's approach, choosing to reuse "financial transactions" instead of limiting the examination further to any specific "accounts," "records," or "books" as mentioned in the other accounting-specific definitions in Fintiv's cited textbook excerpt (Appx3826).

### 2. The Board's Construction Is Also Supported by the Extrinsic Evidence in Light of the Intrinsic Evidence

The Board correctly interpreted "auditing financial transactions" according to its ordinary and customary meaning to mean the "official examination of financial transactions," consistent with the intrinsic and extrinsic evidence, including Fintiv's own cited textbook and Apple's cited '184 reference. Appx18-20.

Fintiv's cited textbook consistently defines "audit" to be a type of official examination. Appx3826. For example, the textbook states that the "dictionary meaning" of the word "audit" is the "***official examination*** of accounts." *Id.*

(emphasis added). The other two accounting-specific definitions are consistent. For example, "a leading American accountant" defined "auditing" as "a ***systematic examination*** of the books and records of a business or other organisations, in order to check or verify and to report upon results thereof." *Id.* (emphasis added). And according to the Institute of Chartered Accounts of India (ICAI), "[a]n audit is the ***independent examination*** of financial information of any entity …." *Id.* (emphasis added). Though Fintiv complains that the Board improperly left out the "of accounts" language from the textbook's "dictionary" meaning (Blue Br. 16-21), the Board's decision to do so properly comports with the intrinsic evidence (Appx19). As discussed above, the context of the claim language and the specification make clear that it is "financial transactions"—rather than "accounts" or financial transactions "in accounts"—that is the focus of the "auditing," and the '386 patent is likewise not limited to such accounting-specific language.

And consistent with the intrinsic evidence, the Board correctly determined that the extrinsic evidence does not support temporally limiting "auditing" to only "***retrospective***" examinations, as Fintiv contends. As the Board found, nothing in Fintiv's cited textbook "dictate[d] that the function of 'auditing' must be performed retrospectively." Appx19. And Fintiv's expert's own definition of "auditing" did not include a temporal requirement, instead focusing on the function of validating a transaction's legitimacy rather than the time at which the validation must be

performed. As Dr. Shamos stated, "[a] POSITA would understand the plain and ordinary meaning of 'auditing' a transaction to be independently reviewing the transaction for validity to ensure that it is legitimate." Appx3788 (¶ 46) (Shamos Decl.). Thus, even Fintiv's own expert's definition does not preclude auditing from occurring while a transaction is still ongoing.

Furthermore, Apple's cited '184 reference affirmatively supports the Board's determination to not limit "auditing" to only retrospective examinations of completed financial transactions stored "in accounts," as Fintiv incorrectly contends. As the Board explained in its Final Written Decision, the '184 prior art reference supports Apple's argument that "a [POSITA] would have known that auditing a financial transaction in an electronic payment system…could be performed as part of the transaction prior to completion." Appx17 (citing Appx3422 (5:27-34) ('184 reference)). Specifically, as Apple's Reply pointed out, the '184 reference states that a "***[p]ayment authorization may involve an audit***, which may include comparing data from one or more of a buyer-based audit, seller-based audit or an audit based upon a third party operating the central/integrated processor. ***The results of the audit can be provided…as an indication that the transaction can go forward***." Appx724 (citing Appx3422 (5:27-34)) (bolding applied by Apple; italics added). Because the '184 reference indicates that an "audit" may be performed before "the transaction can go forward," it contradicts Fintiv's assertion that

transactions can be audited only once they have finished "transact[ing]" and are stored "in accounts" (Blue Br. 21).

To the extent Fintiv disagrees with the Board's evaluation of the extrinsic evidence, the Court should affirm those factual findings as supported by substantial evidence. *See Knowles*, 883 F.3d at 1363-64. In *Knowles*, the Court affirmed the Board's construction of a claim term ("package") based on extrinsic evidence under similar facts. 883 F.3d at 1363-64. As here, there was no dispute that the "claims and specification did not offer a definition" of the claim term at issue. *Id.* at 1364. Thus, the Board turned to the extrinsic evidence for guidance on the meaning of the term. *Id.* at 1363-64. Patentee Knowles presented various dictionaries and treatises to support its sought-after limitation. *Id.* at 1363. As the Court found, the Board "correctly noted" that "many" of them included "qualifying language" that undermined the restriction that Knowles sought, and other extrinsic evidence affirmatively supported that the "package" term need not be so confined. *Id.* at 1363-64. Though Knowles argued on appeal that the Board's construction (which excluded its desired restriction) impermissibly "broade[ned]" the term, as Fintiv does here, the Court rejected that argument, explaining that the Board "reviewed all the extrinsic evidence, including evidence proffered by [patentee]" that did not uniformly support Knowles's favored restriction to the claimed "package" term, and "found no evidence that the definition was limited to" the restriction sought by

patentee, as the Board did here. *Id*. As such, the Court concluded that the Board "properly considered extrinsic evidence" and saw "no error in the [Board]'s claim construction based on this extrinsic evidence." *Id*. at 1364. The Court should likewise reach the same conclusion here.

### B. Fintiv's New Arguments that the Board's Construction Is Overbroad Are Meritless

On appeal, Fintiv no longer explicitly pursues its originally proposed (and properly rejected) "retrospective" construction of "auditing financial transactions," opting instead to reframe its failed arguments as attacks on the Board's construction based on the ordinary and customary meaning. In particular, Fintiv argues, based solely on extrinsic evidence in the form of a textbook excerpt, that the Board's construction of "auditing financial transactions" is overbroad for two purported reasons: (1) it is not limited to examining financial transactions "in accounts" (Blue Br. 16-21), and (2) there is no support for the Board's construction that allows auditing to be performed "before" the financial transactions are ***in an account*** (*id.* 21-24). These arguments fail because they either: (1) reraise the same retrospective requirement that the Board correctly rejected as unsupported by the record evidence, and thus fails for the same reasons, or (2) seek to newly construe the "auditing" term as limited to the accounting context—such a construction is forfeited and fails on the merits because it is inconsistent with the intrinsic evidence and turns on

disagreements with the Board's evaluation of the extrinsic evidence, which are supported by substantial evidence.

### 1. Fintiv's Overbreadth Arguments Amount to the Same Meritless Attempt to Inject a "Retrospective" Requirement that the Board Already Properly Rejected as Unsupported by the Record

Fintiv's overbreadth arguments constitute merely renewed attempts to impose the "retrospective" restriction on the construction of "auditing," which the Board already properly rejected as unsupported by the intrinsic and extrinsic evidence, and thus should be dismissed by the Court as similarly meritless. *See* Section II.A, *supra*.

Though Fintiv styles its overbreadth arguments as raising separate issues (Blue Br. 16-24), they reduce to the same dispute—whether financial transactions must be audited ***retrospectively***. With respect to its first argument, Fintiv contends that the Board "improperly broadened" the "auditing" term by reading out "of accounts" from the dictionary meaning. Blue Br. 16. But, as explained above in Section II.A, the Board correctly construed the "auditing" to be a process directed to "financial transactions," which is consistent with Fintiv's own proposed construction doing the same (i.e., repeating "financial transactions" from the claim language instead of "accounts"). As Fintiv makes clear in its briefing, the crux of its argument is that "an audit must review the accuracy and veracity of the ***transactions actually entered in the account books*** being audited" and thus "cannot be simply any official examination of financial transactions." Blue Br. 21 (emphasis

added). In other words, by requiring the financial transactions be "entered in the account books" before they are audited, Fintiv is rehashing its failed argument that the financial transactions must be examined ***retrospectively***, which again fails as unsupported by the intrinsic and extrinsic evidence. *See* Section II.A.

Fintiv's second argument that there is no record evidence supporting the Board's construction (Blue Br. 21-24) echoes the same dispute. Though Fintiv frames this argument as a lack of evidence issue, it makes clear that its real concern is that auditing cannot "simply be the official examination of financial transactions ***before they were actually financial transactions in an account***." *Id.* at 21 (emphases added). This is the same as the first argument and fails for the same reasons.

### 2. Fintiv's Arguments Seeking to Limit the "Auditing" Term to Examining Only Financial Transactions "In Accounts" Are Inconsistent with the Intrinsic and Extrinsic Evidence

Both of Fintiv's arguments are forfeited and fail on the merits. As an initial matter, by seeking to restrict the "auditing" term to only financial transactions "in accounts," Fintiv effectively proposes a new construction that limits the "auditing" term to an accounting-specific context. This position could have been, but was not, raised by Fintiv below when it was discussing the accounting-specific definitions set forth in its cited textbook. Accordingly, this new construction is forfeited. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("Because

Google failed to present these claim construction arguments to the Board, Google forfeited both arguments.”).

In any event, Fintiv’s new accounting-specific construction fails because it is inconsistent with the intrinsic evidence and turns on disagreements with the Board’s factual assessment of extrinsic evidence that should be affirmed as supported by substantial evidence. ***First***, the plain language of the claims contradicts the “in accounts” limitation that Fintiv asks the Court to inject. As the context of the claims makes clear, “auditing” is performed on “financial transactions” without restriction—not on financial transactions solely “in accounts,” as Fintiv suggests based on its accounting-specific definitions. As such, limiting “auditing” to only financial transactions “in accounts” would improperly elevate select language from the extrinsic evidence over the plain language of the claims themselves. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) (“extrinsic evidence…may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language”). ***Second***, the ’386 specification is consistent with the claim language. The specification does not mention storing financial transactions in any account. Nor does it mention that auditing is performed only on financial transactions in accounts. Rather, as the Board correctly concluded (Appx18)—and Fintiv has never disputed—the specification’s only mention of “auditing financial transactions”

repeats the claim term with no further restriction (Appx146 (13:25-29); Appx868 (28:14-17) (oral hearing)). As such, Fintiv's suggestion to import the "accounts" language from its favored dictionary language improperly "rel[ies] on dictionary definitions at the expense of a fair reading of the claims, which must be understood in light of the specification." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1377 (Fed. Cir. 2014) (concluding that district court's construction of "instructions," which included "in a programming language" based on defendants' suggested dictionary language, was too narrow because the construction conflicted with the specification, which "does not use 'instructions' in relation to 'programming language statements'").

The extrinsic evidence does not require the "auditing" term to be limited to only financial transactions "in accounts" either. Fintiv's cited textbook excerpt, which is the sole basis for Fintiv's new construction, does not support its favored restriction. Out of the three separate meanings of "audit"/ "auditing" set forth in Fintiv's textbook excerpt, two of them do not even use the word "account" (i.e., "leading American accountant" definition, Institute of Chartered Accountants of India (ICAI) definition). Appx3826. And consistent with the claim language, the ICAI definition does not limit auditing to financial transactions to being stored in a particular form: "An audit is the independent ***examination of financial information*** of any entity, whether profit oriented or not and irrespective of its size or legal form,

when such an examination is conducted with a view to express an opinion thereon." *Id.* (emphases added). Though Fintiv selectively focuses on the language in the textbook that mentions "accounts" and "books of accounts" (Blu Br. 18-21), that language does not necessitate the narrow construction Fintiv now seeks where other extrinsic evidence (not to mention intrinsic evidence) does not support such a limiting construction. *See Knowles*, 883 F.3d at 1363-64.

Moreover, as discussed above in Section II.A.2, Apple's cited '184 reference undercuts the "in accounts" construction proposed by Fintiv. *See Vitronics*, 90 F.3d at 1584 ("prior art references" may be "indicative of what all those skilled in the art generally believe a certain term means" even if "not cited in the specification or file history"); *Am. Radio LLC v. Qualcomm Inc.*, 578 F. App'x 975, 980 (Fed. Cir. 2014) (non-precedential) (affirming district court's construction of claim term based on prior art patent not cited in asserted patent). The '184 reference indicates that a POSITA would have understood that an audit may be performed during a transaction before "the transaction can go forward" (Appx3422 (5:31-34))—contradicting Fintiv's assertion that transactions can be audited only once they have finished "transact[ing]" and are stored "in accounts" (Blue Br. 21).

At bottom, Fintiv's arguments about the purported overbreadth in the Board's construction of "auditing financial transactions" boil down to disagreements with the Board's factual evaluation of the extrinsic evidence, and are inconsistent with

the claim language and specification. And even if that were not the case, Fintiv's arguments fail to undermine the substantial evidence—including the plain claim language, '386 specification, '184 reference, and broader definitions in Fintiv's own cited textbook—supporting the Board's construction. Appx155 (31:1) ('386 claim 1); Appx146 (13:25-29) ('386 specification); Appx3422 (5:27-34) ('184 reference); Appx3826 (textbook).

Fintiv cites several cases in an attempt to support its claim construction arguments, but none of them is on point. *TQ Delta, LLC v. Cisco Sys.*, 942 F.3d 1352, 1363 (Fed. Cir. 2019) (cited at Blue Br. 17, 20) expressly declined to substantively address the claim construction dispute. *Personalized Media Commc'n, LLC v. Apple Inc.*, 952 F.3d 1336, 1340-46 (Fed. Cir. 2020) (cited at Blue Br. 20) is inapposite because it addressed claim construction based solely on the intrinsic evidence, which is the opposite of what Fintiv advocates here. And, if anything, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15, 1321 (Fed. Cir. 2005) (cited at Blue Br. 17, 19) reinforces the Board's construction and contradicts what Fintiv now proposes. Though Fintiv cites *Phillips* for the proposition that a construction should not be "unduly expansive" based on extrinsic evidence (Blue Br. 17, 19), that warning in *Phillips* was actually against constructions based on "dictionary definition[s]" that were "entirely divorced from the context of the written description." *Phillips*, 415 F.3d at 1321. The Board did not commit that error here.

Consistent with *Phillips*, the Board declined to wholesale import the accounting-specific dictionary excerpt from Fintiv's textbook—leaving out "accounts," which contradicted the broader language in the claims and specification ("financial transactions" without restriction). *Id.*

In light of the above, under the *de novo* standard, the Court should affirm the Board's construction of the "auditing" term as not limited to examining only financial transactions "in accounts," and likewise uphold the Board's factual determinations about extrinsic evidence underlying its construction as supported by substantial evidence.

## III. Substantial Evidence Supports the Board's Factual Finding that Dill Discloses "Auditing Financial Transactions," and Fintiv's Arguments to the Contrary Are Forfeited

The Board's finding that Dill discloses "auditing financial transactions" according to its ordinary and customary meaning (i.e., "official examination of financial transactions") is supported by substantial evidence, including extensive citations to Dill and testimony from Apple's expert, Dr. Houh.

In particular, the Board found that: (1) "Dill discloses assigning a transaction identifier to a transaction," and (2) Dill's "money transfer facilitator 140 receives and verifies the transaction identifier, and in response to verifying the transaction identifier," proceeds to complete the rest of the verified transaction. Appx64 (citing Appx2934-2935 (¶ 41), Appx2942 (¶ 105) (Dill)). Based on these disclosures, the

Board "agree[d] with Apple['s]" argument and its expert's (Dr. Houh's) testimony that "Dill's money transfer facilitator 140 performs the function of 'auditing financial transactions.'" Appx63 (citing Appx380-381 (Petition), Appx738-739 (Reply), and Appx2814-2815 (¶ 97) (Houh Decl.)). In particular, Dr. Houh opined that, based on paragraphs 41 and 51 in Dill, "Dill teaches that the money transfer facilitator 140" is operable to implement "auditing financial transactions" by "means of a unique identifier and verifying related records." Appx2841 (¶ 97).

Substantial evidence supports the Board's determination that "Dill's money transfer facilitator's 140 verifying a transaction by using a transaction identifier" teaches the "official examination of financial transactions" under the Board's plain and ordinary construction of the "auditing" term. Appx64 (citing Appx2934-2935 (¶ 41), Appx2942 (¶ 105) (Dill)). First, the verification performed by Dill's "money transfer facilitator" is an ***official*** verification. *See* Appx2934-35 (¶ 41) (Dill); Appx64 (Final Written Decision). Second, Dill's "verification" of a transaction identifier is an ***examination***. *Id.* Indeed, Fintiv's own prior claim construction position supports this—its proposed construction of "auditing" included "verification," and Fintiv's cited textbook and supporting expert testimony included similar verbiage. Appx667 (POR) ("verify"); Appx3826 (textbook); Appx3789-3790 (Shamos Decl.). Third, Dill's "transaction identifier" represents the financial transaction, as Dill explicitly states (and the Board found) that the "transaction

identifier" is "assign[ed]" to the "transaction" as a whole. Appx2942 (¶105) (Dill)); Appx64.

These facts provide substantial evidence supporting the Board's conclusion that Dill's teaching of a money transfer facilitator verifying a transaction identifier, which represents a transaction, constitutes an "official examination of financial transactions" under the ordinary and customary meaning of the "auditing" term. Appx63-64.

### A. Fintiv Forfeited Its Arguments that Dill Does Not Disclose "Auditing Financial Transactions"

All of Fintiv's arguments on appeal attempting to refute Dill's disclosure of "auditing financial transactions" under the Board's construction are forfeited. In particular, Fintiv argues that: (1) the Board improperly treats the "executing financial transactions" limitation as having the same meaning as the "auditing financial transactions" limitation by relying on the same disclosure in Dill (Blue Br. 25-27), (2) there is no support for the Board's finding that Dill's verification of a transaction identifier examines the "transaction itself" (*id.* 27-30), and (3) Dill does not disclose "auditing financial transactions" in its plural form (*id.* 30-31). Fintiv's arguments could have been, but were not, raised in the IPR proceedings below. As such, they are forfeited. *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1378 (Fed. Cir. 2023) ("Any argument not raised to the Board is forfeited, and we decline to consider it for the first time on appeal.").

Regarding Fintiv's first argument, the Board relied on the same disclosures in Dill as Apple set forth in its Petition to meet the "executing" and "auditing" terms. *See* Appx37-38 (Final Written Decision); Appx379-381 (Petition). Thus, because Fintiv could have taken issue with these disclosures at any time during the IPR proceedings but chose not to, this argument is forfeited.

Regarding Fintiv's second argument (Blue Br. 27), Fintiv failed to contest below that Dill's verification of a "transaction identifier," which Apple relied upon to meet the "auditing" term in its Petition (Appx380-381), disclosed verification of the ***transaction itself***. Instead, Fintiv's sole dispute regarding Dill's disclosure of the "auditing" term revolved around Dill's purported failure to disclose "retrospective" examination. Appx684-685 (POR); Appx761-762 (Sur-Reply). As such, this argument newly raised on appeal is also forfeited. *See Netflix*, 84 F.4th at 1378

Fintiv's third argument—that Dill fails to disclose auditing ***multiple*** "financial transactions" (Blue Br. 30-31)—is likewise forfeited. The Board relied on the same disclosure as Apple to meet "financial transactions" (in its plural form) in the Petition. Again, because Fintiv failed to dispute this purported deficiency in Apple's argument below, Fintiv's argument is forfeited. *See Netflix*, 84 F.4th at 1378.

### B. Even if Not Forfeited, Fintiv's Arguments Fail to Undermine the Substantial Evidence Supporting the Board's Factual Finding that Dill Discloses Official Examination of Financial Transactions

Even if Fintiv's arguments against Dill's disclosure of the plain meaning of the "auditing" term are not forfeited, they should still be rejected because they fail to identify any error that undermines the substantial evidence supporting the Board's determination.

***First***, Fintiv's argument that the Board treated the requirements of "executing" and "auditing" a financial transaction as having the same requirements (Blue Br. 25-27) misstates the Board's finding. Rather, for "executing financial transactions," the Board endorsed Apple's undisputed argument that this limitation was met by Dill's disclosure of "***delivering funds*** to the bank account of recipient 110 such as destination account 175." Appx37 (emphasis added). For the "auditing" limitation, the Board mentioned that a "transaction identifier … may be used to … determine delivery of the transfer," but ultimately concluded that it was Dill's disclosure of "***verifying a transaction*** by using a transaction identifier" that "teaches 'auditing financial transactions.'" Appx64 (emphasis added). Though Dill discloses that its transaction identifier may be used in both "auditing" and "executing" processes, those two uses differ from each other: to "audit" a financial transaction, the identifier is used to ***verify*** the transaction, and to "execute" the transaction, the identifier is used to ***deliver the funds***. Thus, unlike the lower court in *Merck & Co.*

*v. Teva Pharms. USA Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (cited at Blue Br. 26), the Board did not introduce superfluity by interpreting the "auditing" term to mean the same as "executing" term, as Fintiv wrongly suggests. Rather, the Board relied on separate disclosures in Dill to meet the two claim terms, thus giving distinct meanings to each.

***Second***, Fintiv ignores the Board's citations to Dill in arguing that there is no support for the Board's determination that the "transaction itself" in Dill is officially examined. Blue Br. 27-28. The Board found that Dill's "money transfer facilitator's 140 verifying a transaction by using a transaction identifier" teaches the "auditing" term under its plain meaning of "official examination of financial transactions." Appx64 (citing Appx2934-2935 (¶ 41), Appx2942 (¶ 105) (Dill)). Furthermore, the Board found that Dill discloses that the transaction identifier is "assign[ed] … to a transaction." Appx64 (citing Appx2934-2935 (¶ 41), Appx2942 (¶ 105) (Dill)). Thus, these cited disclosures in Dill provide substantial evidence to support the Board's finding that Dill's verification of a transaction identifier, which is assigned to and thus represents a pending transaction, constitutes examining the transaction itself. Appx64.

Further, the Board cited testimony from Apple's expert (Dr. Houh), who explained that Dill's disclosure of "verify[ing] the transaction identifier" teaches "auditing financial transactions" by "means of a unique identifier and verifying

related records." Appx63 (citing Appx2841 (¶ 97) (Houh Decl.)). This expert testimony constitutes additional substantial evidence supporting the Board's determination that the "auditing" term is met. To the extent Dr. Houh's testimony insufficiently supports the Board's finding that Dill's verification of a transaction identifier examines the transaction itself, as Fintiv wrongly suggests (Blue Br. 28-29), Dill alone is enough to support the Board's determination, as discussed above. Contrary to Fintiv's contention, expert testimony is not needed. *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1079 (Fed. Cir. 2015) ("[n]o rule requires … an expert [to] guid[e] the Board as to how it should read prior art"). *Honeywell*, cited by Fintiv multiple times, is inapposite. Blue Br. 24, 29. In *Honeywell*, the Federal Circuit reversed the lower court's obviousness determination where the prior art itself did not explicitly disclose a requirement of a claim construction and there was no expert testimony to fill that gap. *Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1299 (Fed. Cir. 2010). Here, not only does Dill alone provide substantial evidence, Dr. Houh does as well. As such, Fintiv's cited cases relating to insufficient expert testimony do not apply. *See* Blue Br. 24-25, 29 (citing *TQ Delta*, 942 F.3d at 1362; *Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 262-63 (Fed. Cir. 2022)).

Additionally, there is no basis for Fintiv's argument that Dill's verification must be performed on a "complete" transaction in order to constitute an examination of the "transaction itself." Blue Br. 31. Nothing in the claims requires that every

aspect of the financial transaction be examined, or that the transaction must be completed to be examined. And, as discussed above in Section II.A, the Board already considered and properly rejected Fintiv's proposed "retrospective" requirement. Thus, under the Board's ordinary and customary construction of "auditing financial transactions," a transaction can be examined while it is ongoing and not yet complete, as Dill discloses. This does not create confusion about claim scope for infringement purposes, as Fintiv misguidedly argues (Blue Br. 31). Thus *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1371 (Fed. Cir. 2005), which Fintiv cites (Blue Br. 31), does not apply.

In light of the disclosures in Dill relied upon by the Board and supporting testimony from Apple's expert, Dill teaches that the purpose of verifying the transaction identifier is to verify the legitimacy of the transaction as a whole such that the transaction may proceed to completion. Appx62-64. As such, substantial evidence supports the Board's conclusion that verifying the transaction identifier constitutes an examination of the transaction.

***Third***, Fintiv's argument that Dill does not disclose auditing multiple "financial transactions" (Blue Br. 30-31) again disregards the substantial evidence supporting the Board's findings. As the Board found, "Dill generally relates to '***financial transfers***' and, in particular, 'to financial transfers utilizing a unique identifier to facilitate flexible payment options for the transaction.'" Appx30

(quoting Appx2931 (¶ 2) (Dill)) (emphasis added). For a given transaction, Dill discloses that a money transfer facilitator "verif[ies] a transaction identifier" to determine whether a transfer should be delivered. Appx64 (citing Appx2934-2935 (¶ 41), Appx2942 (¶ 105) (Dill)). Thus, Dill teaches repeating the verification of a transaction identifier for every transaction in a system intended to perform multiple financial transfers, and thus discloses auditing multiple financial transactions.

Accordingly, the Court should affirm the Board's conclusion regarding Dill's disclosure of the "auditing" term as supported by substantial evidence.

## IV. Substantial Evidence Supports the Board's Factual Finding that Dill Discloses the Claimed Deposit Transaction

The claimed deposit transaction requires that a subscriber deposit funds into his/her ***own*** account. Substantial evidence supports the Board's finding that Dill discloses this same-subscriber requirement, including explicit language from Dill contemplating that the sender and recipient of a transaction are the same entity, as well as testimony from Apple's expert (Dr. Houh) credited by the Board.

In particular, the Board found that Dill discloses a "sender 105" that initiates a money transfer to a recipient using a mobile wallet application using one of many "delivery options," including "delivering funds to a funds withholding system." Appx53 (citing Appx2926 (Fig. 5, step 515), Appx2931 (¶¶ 3, 10), Appx2939 (¶ 77) (Dill)). The Board, "credit[ing] testimony from Dr. Houh, concluded that Dill teaches "deposit[ing] funds" because the funds delivered to the withholding system

are "transferred to an account." Appx53 (citing Appx2931 (¶ 3), Appx2942 (¶ 101) (Dill); Appx2839 (¶ 131) (Houh Decl.)). In support, the Board endorsed Dr. Houh's testimony that Dill discloses "delivering funds to a bank account" and "wiring" money to a recipient using a money order that is "deposited with the third party." Appx2839 (¶ 131) (Houh Decl.) (citing Appx2931 (¶ 3), Appx2942 (¶ 101)). Furthermore, the Board relied on explicit language from Dill contemplating that the sender and recipient of the money transfer could be the same entity. As the Board noted, Dill states that "***any given entity*** and/or device associated with that entity can ***alternately act as sender or recipient***." Appx53 (citing Appx2936 (¶ 52) (Dill)) (emphasis in original). Thus, the Board concluded that "Dill teaches or fairly suggests a deposit transaction where the sender deposits money into his/her own account," as required by the claimed deposit transaction. Appx54.

Fintiv does not dispute that Dill discloses a subscriber depositing funds into ***an*** account. Rather, Fintiv's primary disagreement on appeal concerns whether the account receiving the deposit belongs to the ***same subscriber*** making the deposit. Blue Br. 33-39. The Board relied on Dill's statement (at paragraph 52) that "any given entity…can alternately act as sender or recipient" to encompass scenarios where the sender and recipient are the same entity for the ***same*** transaction. Appx52-53 (citing Appx2936 (¶ 52)). Fintiv insists that this statement can be interpreted only in certain narrow, self-serving ways: (1) that a given entity can only

"alternately" act as "sender or recipient" in ***different*** transactions (Blue Br. 33-36), and (2) that this statement does not apply to the "funds withholding" and "money orders" disclosures purportedly relied upon by the Board to meet the claimed deposit transaction (*id.* 36-39). These arguments have no merit. As detailed below, Fintiv fails to identify anything in Dill requiring the restrictive reading it advocates.

Fintiv cites a few instances where Dill purportedly treats the sender and recipient as being different entities, but these exemplary discussions are not as restrictive as Fintiv contends. ***First***, Fintiv argues that "Dill's figures show the sender and recipient as two different entities" (Blue Br. 34), but all of Dill's figures are described as "exemplary." *See* Appx2932 (¶¶ 17-25). And even if the "sender" and "recipient" are represented in different boxes in an exemplary figure (e.g., Figure 1), that says nothing about whether these different boxes can be associated with the ***same subscriber account***, as required by the claims. ***Second***, Fintiv points to Dill's discussion at paragraph 57 of "unrelated entities" (Blue Br. 34), but this description is not as expansive as Fintiv would like. To the contrary, the language in paragraph 57 is explicitly permissive, stating that "[s]uch a system 100 ***allows*** a money transfer facilitator … to provide a structured settlement between ***unrelated entities*** such as the sending mobile wallet 125 and receiving mobile wallet 130…. ***It need not be a closed-loop system*** that allows mobile remittances only for consumers who are enrolled in the same mobile wallet system." Appx2937 (¶ 57) (Dill)

(emphases added). Indeed, as the Board reasonably concluded, Dill's acknowledgement that system 100 "need not be a closed-loop system" makes clear that Dill contemplates alternative embodiments ***not*** involving "unrelated entities." Appx54 (citing *id.*). Thus, Fintiv's own-cited disclosure contradicts its narrow reading.

Fintiv's argument that the Board lacks expert testimony support for its finding that Dill's sender and recipient can be the "same entity" (Blue Br. 35) is both factually wrong and legally irrelevant. Dr. Houh testified that "Dill explains that its system ***is not limited to 'sender' and 'receiver' transactions"*** and quoted the language at paragraph 52 stating that "***any given entity … can alternately act as sender or recipient***," thus supporting Fintiv's argument that Dill contemplates the sender and recipient being the same party. Appx2839 (¶ 132) (Houh Decl.) (citing Appx2936 (¶ 52) (emphases added). Regardless, the Board need not rely on expert testimony to determine what Dill discloses. *Belden*, 805 F.3d at 1079 ("[n]o rule requires … an expert [to] guid[e] the Board as to how it should read prior art"). *Honeywell*, cited by Fintiv (Blue Br. 35), does not require expert testimony support where the prior art itself, as Dill does here, discloses the claim limitation.

Fintiv's further arguments that Dill's discussions about a "funds withholding system" and "money orders" do not explicitly disclose depositing funds to a subscriber's ***own*** account (Blue Br. 36-39) ignore Dill's disclosure that "***any*** given

entity…can alternately act as sender or recipient." Appx2936 (¶ 52) (Dill) (emphasis added). Fintiv does not contend that this statement in Dill (at paragraph 52) is limited to any specific embodiment or offer any reason why it was unreasonable for the Board to apply this intentionally broad statement to Dill's "funds withholding" system in finding that Dill discloses a sender who deposits funds in the sender's ***own*** account. Appx53 (Final Written Decision); Appx2942 (¶ 101) (Dill).

Fintiv's arguments about the Board's reference to other disclosures in Dill regarding transferring money to a "third party" via "wiring" or "money orders" are even further off the mark because the Board did not rely on them to support the same-subscriber requirement at issue on appeal. Blue Br. 36-38 (citing Appx2931 (¶ 3) (Dill)). Rather, the Board discussed those disclosures to show that the funds delivered to a withholding system were deposited to an "account," a claim requirement that Fintiv does not even dispute is met. Appx53. But even if the disclosures in paragraph 3 of Dill are somehow relevant, they still do not preclude Dill from disclosing the same-subscriber requirement, as Fintiv suggests. For one, paragraph 3 does not state that "wiring" and "money orders" ***must*** be deposited with a "third party" (as Fintiv suggests), but merely that it is ***"typical[]"*** to do so. Appx2931 ("if a sender is 'wiring' money to a receiver, the money is typically deposited with the third party in person") (emphasis added). Moreover, paragraph

3 discusses "wiring" and "money orders" in the context of "[t]hird party money transfer services," which can still be used by a sender to deposit funds into the sender's own account, as disclosed by Dill. Appx2931 (¶ 3), Appx2936 (¶ 52). As Fintiv itself acknowledges, the '386 patent's own discussion of the same-subscriber limitation uses a third party "agent branch" to facilitate a transfer of funds from a sender to the sender's own mobile account. Blue Br. 5-6 (citing Appx109 (Fig. 14), Appx151 (23:55-24:36)).

Fintiv's final argument that the Board improperly combined Dill's "fund withholding system of paragraph 101" with the "money order deposit of paragraph 3" without expert testimony supporting a reason to combine (Blue Br. 37-38) is a new argument raised for the first time appeal and is accordingly forfeited. Apple relied upon these same disclosures to show that Dill teaches depositing funds into an account in its Petition, and Fintiv raised no issue with the combination of those disclosures below. *See* Appx400 (Petition); Appx672-675 (POR); (Sur-Reply); Appx53 (Final Written Decision). In any event, Fintiv's argument is wrong on the merits too. Unlike *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008) (cited at Blue Br. 37-38), Dill does not treat the two disclosures as alternative embodiments, but rather compatible parts of one integrated money transfer facilitator system. Dill expressly contemplates that "delivering funds to a funds withholding system" is just one of many "delivery options" that are available for

selection to "complet[e] the money transfer transaction" (Appx2942 (¶ 101)), which Dill's background explains is "extensively" initiated by "[t]hird party money transfer services" that use "wire transfers" and "money orders" (Appx2931 (¶ 3)). As such, substantial evidence supports the Board's finding that Dill discloses depositing funds to an account based on Dill's "consistent" discussions in paragraphs 3 and 101. Appx53. *See, e.g., Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1333-34 (Fed. Cir. 2016) (affirming Board's anticipation finding based on two disclosures in a prior art reference because a POSITA "would 'at once envisage' the combination of two of the disclosed tools … to arrive at the system claimed" where the reference "explicitly contemplates the combination of the disclosed functionalities").

The Court should affirm the Board's conclusion regarding Dill's disclosure of the deposit transaction as supported by substantial evidence.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons expressed above, the Court should affirm the Board's determinations that claims 1-3 of the '386 patent are unpatentable.

Respectfully submitted,

*/s/ James L. Davis, Jr.*
James L. Davis, Jr.
James R. Batchelder
Christopher M. Bonny
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Phone: (650) 617-4000

Douglas H. Hallward-Driemeier
Fan Zhang
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Phone: (202) 508-4600

Cassandra B. Roth
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Phone: (212) 596-9000

*Counsel for Appellee Apple Inc.*

Dated: August 15, 2024

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1). The brief contains 10,177 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ James L. Davis, Jr.
James L. Davis, Jr.
*Counsel for Apple Inc.*

**CERTIFICATE OF SERVICE**

On August 15, 2024, the undersigned caused the foregoing document to be filed electronically by using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ James L. Davis, Jr.*
James L. Davis, Jr.
*Counsel for Apple Inc.*