24-1345

# United States Court of Appeals for the Federal Circuit

---

**FINTIV, INC.,**

*Appellant*

v.

**APPLE INC.,**

*Appellee*

---

Appeal from the United States Patent Trial and Appeal Board in IPR 2022-00976 before Administrative Patent Judges Kristen L. Droesch, Michael R. Zecher and George R. Hoskins

---

## APPELLANT FINTIV, INC.'S REPLY BRIEF

---

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
ThucMinh Nguyen
**Kasowitz Benson Torres LLP**
333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA 94065
650.453.5170
jwaldrop@kasowitz.com
djones@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
hkim@kasowitz.com
tnguyen@kasowtiz.com

Meredith Martin Addy
Charles A. Pannell, III
**ADDYHART P.C.**
10 Glenlake Parkway, Suite 130
Atlanta, Georgia 30328
312.320.4200
meredith@addyhart.com
cpannell@addyhart.com

Benjamin M. Cappel
**ADDYHART P.C.**
401 North Michigan Avenue
Suite 1200-1
Chicago, Illinois 60611
732.991.7285
benjamin@addyhart.com

September 26, 2024

***Attorneys for Appellant Fintiv, Inc.***

*(continued on next page)*

Jeceaca An
**Kasowitz Benson Torres LLP**
1633 Broadway
New York, NY 10019
212.506.1808
jan@kasowitz.com

Caren A. Yusem
**ADDYHART P.C.**
1101 Pennsylvania Ave., N.W.
Suite 300
Washington, DC 20004
312.804.4885
caren@addyhart.com

September 26, 2024

***Attorneys for Appellant Fintiv, Inc.***

## CERTIFICATE OF INTEREST

Counsel for Appellant Fintiv, Inc., certifies:

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

   **Fintiv, Inc**.

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

   **None**.

3. **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock of the entities:

   **None**.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. 4. 47.4(a)(4).

   (a) **Daniel H. Golub**
   **Brandon R. Theiss**
   **Volpe Koenig**

   (b) **Not applicable**.

5. **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **Yes**.

   If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cr. R. 47.5(b).

*Fintiv, Inc. v. PayPal Holdings, Inc.*, No. 23-2312 (Fed. Cir.) (Appeal from United States District Court for the Western District of Texas, No. 6-23-cv-00490-ADA).

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). *See* Fed. Cir. R. 47.4(a)(6).

**None/Not Applicable**.

Dated: September 26, 2024

By: /s/ *Meredith Martin Addy*
Meredith Martin Addy

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..... i

TABLE OF CONTENTS ..... iii

TABLE OF AUTHORITIES ..... iv

ARGUMENT ..... 1

I. The Board's Construction of "Auditing Financial Transactions" Was Overly Broad ..... 3

  **A.** Apple's Strawman "Retrospective" Argument Ignores the Board's New Construction ..... 3

  **B.** Nothing in the Intrinsic or Extrinsic Record Supports the Board's Overly Broad Construction That "Auditing" Constitutes Any "Official Examination" ..... 4

    **1.** The intrinsic record does not excuse the Board's error. ..... 4

    **2.** The only extrinsic evidence relied upon by the Board fails to support the Board's broad construction. ..... 6

  **C.** Fintiv's Construction Argument is Not Forfieted and is Mandated By the Evidence ..... 10

    **1.** Fintiv's claim construction arguments on appeal are not forfeited. ..... 10

    **2.** In contrast to the Board's construction, Fintiv's claim construction position is entirely consistent with the intrinsic and extrinsic evidence. ..... 12

II. Use Of Dill's Transaction ID Is Not "Auditing Financial Transactions" Under Any Proposed Construction ..... 14

  **A.** Fintiv's Arguments on Appeal Are Not Forfeited ..... 16

  **B.** Apple Fails to Show Substantial Evidence that Dill Meets the "Auditing Financial Transactions" Limitation. ..... 20

III. Dill Does Not Disclose a "Deposit Transaction" ..... 23

CONCLUSION ..... 27

CERTIFICATE OF COMPLIANCE ..... i

## TABLE OF AUTHORITIES

### Cases

*Applications in Internet Time, LLC v. RPX Corp.*,
897 F.3d 1336 (Fed. Cir. 2018)....................14

*Aqua Prods. v. Matal*,
872 F.3d 1290 (Fed. Cir. 2017)(en banc).................... 4, 13

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016).................... 25, 26

*Chamberlain Grp., Inc. v. One World Techs., Inc.*,
944 F.3d 919 (Fed. Cir. 2019).................... 16, 17, 19

*Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*,
460 F.3d 1349 (Fed. Cir. 2006).................... 11, 16

*FanDuel, Inc. v. Interactive Games LLC*,
966 F.3d 1334 (Fed. Cir. 2020)....................25

*Harris Corp. v. Erickson Inc.*,
417 F.3d 1241 (Fed. Cir. 2005).................... 11, 17

*Honeywell Int'l, Inc. v. United States*,
609 F.3d 1292 (Fed. Cir. 2010)....................22

*In re Google Technology Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020).................... 12, 16

*Interactive Gift Express, Inc. v. CompuServe Inc.*,
256 F.3d 1323 (Fed. Cir. 2001).................... 11, 20

*Knowles Electronics LLC v. Cirrus Logic, Inc.*,
883 F.3d 1358 (Fed. Cir. 2018).................... 9, 10

*Phillips v. Awh. Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)(en banc)....................4

*Sanofi-Aventis Deutschland GmbH v. Mylan Pharm. Inc.*,
66 F.4th 1373 (Fed. Cir. 2023) ....................22

*Vitronics Corp. v. Conceptronic Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)..........................................................................12

# ARGUMENT

Apple's response fails to overcome the fact that the Board's construction of "auditing financial transactions" and purported Dill disclosures of such auditing and depositing of transactions are flawed. The Board offers no evidence or explanation for how it could read the term "auditing" to mean any "official examination" when the only evidence it relied upon for that construction specified a narrower definition anchored in a realistic understanding of auditing that is performed on accounts, books, and records.

The Board then used this construction to improperly hold that Dill's reference to a verification of a transaction identifier during a transaction and before the transaction even completes constitutes an audit of that transaction. Such an expansive reading made the term "auditing financial transactions" meaningless because it could be applied to any sort of examination upon any part of any financial process regardless of whether there was ever a transfer completed and regardless of whether the examination actually audited the financial transaction itself. Even the most common sense, natural understanding of an audit requires more than simply verification of an identifier. Auditing a bank account or tax return, after all, is certainly more than just the examination of a person's bank account number or social security number.

Finally, the Board misapplied the Dill reference to the deposit transaction limitation. The Board and Apple rely upon Dill's identification of senders and recipients to a transaction and assert that a sender and recipient can be the same person in Dill. While Dill acknowledges that in one transaction at one time an entity can be a sender but in another transaction at a different time the same entity can be a recipient, Dill never indicates the same entity can be both the sender and recipient in the same transaction at the same time. Apple and the Board dismiss this fact arguing that the only sender and recipient limitation in Dill refers to a "temporal" restriction and has no restriction on a sender and recipient being the same entity in the same transaction. But a single transaction from a sender to a recipient necessarily occurs at the same time. The Board seems to operate under the unusual assumption that a person who sends with their right hand and receives with their left does so at two different times. This makes no sense and would, if allowed, render meaningless the actual temporal restriction in Dill that only permits the same entity to be the sender and recipient at different times, *i.e.*, in different transactions.

For the reasons discussed in Opening and now in Reply, the Board's judgment should be reversed.

## I. The Board's Construction of "Auditing Financial Transactions" Was Overly Broad

The Board improperly construed "auditing financial transactions" to mean the "official examination of financial transactions." Under the Board's construction the term "auditing" should be defined as simply any "official examination." But, that construction is not supported by the evidence considered.

### A. Apple's Strawman "Retrospective" Argument Ignores the Board's New Construction

Apple's response to claim construction repeatedly emphasizes the point that the Board rejected Fintiv's proposed construction below that "auditing financial transactions" should include a "retrospective" requirement and be construed to mean "performing retrospective inspection and verification of financial information." Red Brief ("RB") at 20-23, 26-28, 39-40 (repeating "retrospective" arguments). While Fintiv continues to assert that its construction makes the most sense because the evidence indicates audits are performed on transactions in existence, the primary concern on appeal of this claim construction is that the Board created its own, new construction that was not proposed by either party—*i.e.*, "official examination of financial transactions." Appx0062-0064. Thus, Apple's creation of a strawman "retrospective" construction from Fintiv's original argument misses the key problem. Apple must demonstrate that the ultimate construction adopted by the

Board is the correct one, and not that Fintiv's construction that the Board did not adopt was flawed.

Below, the Board reviewed the evidence and rejected the "retrospective" requirement because it found nothing in the record to suggest that "auditing" had a temporal requirement. Appx0018-0019. However, such a rejection does not give the Board free reign to define the term "auditing" in any way it chooses. Whether intrinsic or extrinsic, the Board's construction must be anchored in actual evidence. *See generally Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). And, the Board must explain how that evidence leads to the construction found. *See Aqua Prods. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) (en banc) ("[A]n agency must explain why it decides any question the way it does"). As the extrinsic evidence indicated, an audit refers to some sort of books, accounts, or records of an entity and not simply the "official examination" of anything as the construction suggests. Appx3826.

### B. Nothing in the Intrinsic or Extrinsic Record Supports the Board's Overly Broad Construction That "Auditing" Constitutes Any "Official Examination"

#### 1. The intrinsic record does not excuse the Board's error.

Apple incorrectly asserts that the intrinsic record supports its position that "accounting" and "account" terms are not appropriate to consider in any proposed construction because the patent specification only mentions "financial transactions"

and "business workflows" generally and the words "in accounts" or "accounting" do not appear in the specification. RB21-22. But, arguing that Fintiv's construction fails because certain language is not found in the specification does not help Apple because the specification also provides no reference to an "official examination," yet the Board still used that wording in the construction. Appx0019. In other words, Apple cannot attack Fintiv's reference to "accounts" for not being in the specification and simultaneously promote the Board's construction that was also not found in the specification.[1]

In reality, as the Board noted, the "specification … provides little, if any, guidance" and therefore the Board based its construction of "auditing" on the extrinsic evidence. Appx0018-0019. Thus, contrary to Apple's assertion, there is no indication of anything in the intrinsic evidence that the Board relied upon to determine the proper scope of "auditing financial transactions."

In fact, the intrinsic record Apple cites only supports Fintiv's position that the Board's construction is too broad. As noted, the patent specification refers to auditing in terms of "financial transactions" and "business workflows." Appx0146, 13:25-29. The patent specification does not refer to audits outside of a business or

[1] It is worth noting that, contrary to the Board's "official examination," the term "accounts" is part of the extrinsic definition upon which the Board relied. Appx0019.

financial context. Therefore, reliance on an accounting-specific dictionary definition as the Board reviewed was understandable, if not required.

Apple further criticizes Fintiv for using the word "financial transactions" in its own construction. RB22. But this argument misses the point. Fintiv does not take issue with the fact that the "financial transactions" term was used in the construction of "auditing financial transactions" term. The problem is that the Board simply replaced "auditing" with "official examination" based on a snippet of the extrinsic record rather than the full extrinsic definition that required examination of an account's financial transactions (*e.g.,* the books and records of a business). Though Fintiv used the term "financial transactions" in its own construction, that term was used with proper qualifying language that would have limited it to "retrospective inspection and verification." Appx0062. There is no significant concern with using "financial transactions" *per se*, but its use in a way that reads out any requirement that audit be conducted on accounts, records, books, etc., is not supported by the Board's extrinsic evidence.

**2. The only extrinsic evidence relied upon by the Board fails to support the Board's broad construction.**

Next, Apple contends that the extrinsic evidence is consistent with reading out the "accounts" language from the extrinsic definition. Using the dictionary relied upon by the Board, Apple points out that three definitions in that dictionary focus on

"examinations" and not "accounts." RB22-23. But, this argument is simply incorrect and certainly not the focus of the Board's decision.

First, the Board explicitly noted it was relying upon the first definition that required "official examination ***of accounts***," but failed to explain how it could simply ignore the "of accounts" language and adopt the broader definition of auditing to be any "official examination."

> …[I]it does not state that every audit must include both "inspection" and "verification," as asserted by Fintiv. See id. (stating "[t]he dictionary meaning of audit is ***official examination of accounts***").
>
> In summary, upon weighing all the evidence bearing on the construction of the claim term "auditing financial transactions," we apply the ordinary and customary meaning of this claim term as merely the ***official examination of financial transactions***.

Appx0019 (emphasis added). Although the Board quoted the "of accounts" language for support, the Board fails to explain how it justified removing that language in the ultimate construction that immediately followed that quotation.

Second, the other two definitions provided in the same dictionary offer the same result and explicitly limit the examination definition to accounts and accounting rather than simply any sort of "official examination." In one, the definition is proposed by "a leading American ***accountant***" and not only refers to "systematic examination," as Apple points out, but also notes that examination occurs on "the ***books and records of a business*** or other organizations." Appx3826 (emphasis added). The final definition used by Apple is supplied by the Institute of

Chartered ***Accounts*** of India (ICAI) that defines "auditing" as "the independent examination of ***financial information of any entity…"***. *Id.* (emphasis added). In other words, all three definitions relate to accounts—and not just any examination as Apple proposes.

To be sure, Apple fails to explain away the ultimate conclusion of the extrinsic source that those three definitions refer to examination of accounts and not simply the individual transactions. As the reference concludes:

> ***From the above definitions***, it is seen that an auditor has not only to see the arithmetical accuracy of the books of accounts but has to go further and find out ***whether the transactions entered in the books … are correct or not***. It is possible to perform this function by inspecting, comparing…the vouchers supporting the ***transactions in the books***.

*Id.* (emphasis added).

Apple further cites to an alternative '184 reference for support that "auditing" was neither retrospective nor related to "accounts." RB24. But this argument fails for multiple reasons.

First, despite Apple's claim, the Board did not find in its decision that "the '184 prior art reference supports Apple's argument." RB24 (citing Appx0017). Although the Board referenced Apple's argument, it never indicated that it relied on the '184 reference to construe "auditing financial transactions." Appx0016-0020.

Second, the '184 reference never indicates it is an audit of any financial transaction. Instead, the portion Apple relies upon describes a "payment

authorization" that may involve an audit. Appx3422, 5:27-34. But that audit simply compares existing data from a buyer-based audit, a seller-based audit or an audit based upon a third party" to ultimately determine if a transaction can go forward. Thus, the '184 reference indicates it is an audit of audit data to determine if a transaction can go forward rather than an audit of the financial transactions or account. If anything, the audit in the '184 reference confirms Fintiv's position that audits are performed on retrospective data, *e.g.*, buyer, seller, or third-party data.

Apple's citation to *Knowles Electronics LLC v. Cirrus Logic, Inc.*, 883 F.3d 1358 (Fed. Cir. 2018), is inapposite. In *Knowles*, this Court reviewed the Board's determination that the "package" claim term was not limited to a narrow definition that required a connection with a "mounting mechanism" based on extrinsic evidence. *Id.* at 1362-63. Applying the broadest reasonable interpretation ("BRI") standard, the Board determined extrinsic sources indicated two common forms of mounting, however the Board did not limit the construction to those forms because each extrinsic source used "qualifying language" that implied the connections may not be limited to two types of mounts and could be broader. *Id.* at 1363. For example, the extrinsic sources described packages classified into two categories using qualifying language such as "In *general*," as "two *basic* types," or as "one of the two *major* technological categories." *Id.* at 1363-64 (emphasis in original, citing references). Moreover, in *Knowles* the Board reviewed other extrinsic sources

supporting the existence of more than two categories as the Board construction has adopted. *Id.* at 1364.

Here, Apple offers no facts remotely similar to *Knowles* legally or factually. First, in *Knowles*, the Board applied the BRI standard, not applicable here. Appx0008. Furthermore, there is only one extrinsic source relied upon by the Board here (Appx0019) and nothing in that source—much less anything the Board relied upon—would lead a POSA to conclude "auditing" was broader than the recited "official examination of accounts." The extrinsic dictionary reference does not use qualifying language to suggest auditing could have a broader meaning than it offers. Appx3826. Indeed, the extrinsic source makes clear that audits determine the accuracy of "accounts." *Id.* Finally, the Board relies on no other extrinsic evidence to suggest auditing was broader in the context of the '386 patent. Thus, the Board's conclusion that auditing is simply an "official examination" without limiting the construction to the examination of accounts, books, or records as found in the extrinsic record was error.

### C. Fintiv's Construction Argument is Not Forfeited and is Mandated By the Evidence

#### 1. Fintiv's claim construction arguments on appeal are not forfeited.

Apple further complains that Fintiv's arguments are new and are therefore forfeited. However, here, the Board's construction was determined *sua sponte* and

was not provided by either party. While the Board can choose to construe a term in a manner that was not proposed by either party, it is not forfeiture or waiver for a party to demonstrate why the Board's *sua sponte* decision was wrong. *See Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) (reviewing construction not argued below where "court explicitly construed the term *sua sponte* and applied that construction to the facts"). Fintiv can neither waive nor forfeit arguments it did not have an opportunity to specifically set forth or address below. *See Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1345 (Fed. Cir. 2001) (noting exception to waiver where "the appellant had no opportunity to raise the objection at the district court level"). Here, Fintiv believes that its retrospective construction was correct and based on a combination of the extrinsic evidence and plain meaning of auditing in the art. Blue Brief ("BB") at 21-24. The Board disagreed and attempted to adopt a new, broad definition from the extrinsic source. Fintiv has every right to explain how that construction was error and even if used, should not be redefined more broadly than the extrinsic evidence allowed.

Indeed, even if somewhat different, arguments based on the same concept are not waived or forfeited. *See Harris Corp. v. Erickson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005) (allowing changes in claim construction theories so long as the arguments relate to the same concept). At all times, Fintiv has pointed out that the term "auditing financial transactions" must come from existing transactions in

accounts and cannot be the examination of some incomplete transaction. Appx0667-0668 (emphasizing accounting terminology in extrinsic source for support); Appx0761-0762 (noting grounding of construction in account textbook and problem with audit on incomplete transaction); Appx3788-3789 (expert testimony noting same). Indeed, Fintiv's arguments against the Board's decision are based in the same evidence and reasoning presented to the Board. Whether the construction is based on retrospective nature of the analysis or the account-based nature of the analysis, they both relate to the same concept.

Apple's citation to *In re Google Technology Holdings LLC*, 980 F.3d 858 (Fed. Cir. 2020), is misplaced because it is based on an entirely different posture. In that case, Google failed to press a claim construction of the term "costs" at all, and this Court refused to consider new constructions not decided by the Board first. *Id.* at 863-864. Here, by contrast, Fintiv did assert claim constructions below, and the Board adopted a construction that was not put forward by either party.

### 2. In contrast to the Board's construction, Fintiv's claim construction position is entirely consistent with the intrinsic and extrinsic evidence.

Apple next argues that the requirement that auditing be performed on "accounts" would improperly elevate the extrinsic definition over the intrinsic evidence. RB29. But again, this argument misses the point. While cases such as *Vitronics Corp. v. Conceptronic Inc.,* 90 F.3d 1576 (Fed. Cir. 1996), note that the

extrinsic evidence does not outweigh intrinsic sources; in this case, the Board found that the intrinsic sources did not offer a construction of the "auditing financial transactions" term and construed the term in light of one extrinsic source. Appx0017-0020. Accordingly, it was improper to broaden that construction further than the evidence supports and exclude the specific limitation to accounts in that extrinsic source without additional evidence or analysis.

Apple suggests that reference to "accounts" would conflict with the specification because it does not refer to storing financial transactions or suggest the audit of financial transactions be in accounts. RB29-30. But, Apple's claim analysis is flawed. While claims must be read in light of the specification, Apple cannot prove the construction of a claim by arguing that, if it is not referenced in the specification, it must not be part of the construction.

It is perfectly fine for the Board to adopt the extrinsic source as the plain meaning and use the term "financial transactions" in the construction. Using the Board's understanding of the extrinsic sources, for example, it may be acceptable to construe "auditing financial transactions" to mean "an official examination of an account's financial transactions," however, the Board cannot broaden the extrinsic definition further by dropping the "account" limitation without some explanation of why it should be broadened. *See Aqua Prods.*, 872 F.3d at 1325 ("[A]n agency must explain why it decides any question the way it does"); *Applications in Internet Time,*

*LLC v. RPX Corp.*, 897 F.3d 1336, 1352-53 (Fed. Cir. 2018) ("Our review under [the substantial evidence] standard can only take place when the agency explains its decisions with sufficient precision, including the underlying factfindings and the agency's rationale." (citation and quotation marks omitted).) Here, the Board shifts from an explicit "auditing" definition it relies upon, *i.e.,* "official examination of accounts," to a broader construction that is just, "official examination" without explanation. Appx0019. This is especially problematic when that same extrinsic source indicated it was examining financial transactions "in accounts." *Id.* Apple assumes there is some reason the Board broadened the construction without substantial evidence, but none is discussed or put forward by Apple or the Board.

## II. Use Of Dill's Transaction ID Is Not "Auditing Financial Transactions" Under Any Proposed Construction

Apple does not dispute that the Board relied on the Dill reference to establish the "auditing financial transactions" limitation of the claims. RB33-34. Specifically, that the Board found Dill to disclose auditing by assigning a transaction identifier to the transaction and then verifying that identifier during a money transfer. *Id.*

Apple contends that these steps in Dill meet the "official" requirements of the Board's new claim construction, but Apple fails to explain how the evidence in Dill makes this "official." For example, Apple cites to paragraph 41 of Dill as evidence

the verification performed in the transfer is "an ***official*** verification" (RB34 (emphasis in original) (citing Appx2934-2935)), but nothing at that citation indicates why such verifications are "official." Indeed, there is nothing remotely close to the "official examination" disclosed in the extrinsic source, relied upon by the Board, that describes how a person "knows what to examine" and "how to examine" accounts and perform "systematic" and "independent examinations" of books and records that require "collect[ing] and evaluat[ing] evidence to form an opinion." Appx3826.

Apple continues its argument, by suggesting that Dill performs a "verification" of the transaction identifier, which Apple contends is an "examination." RB34. While verification is a part of an auditing process, such verification occurs on the "books and records of a business." Appx3826. Here, the system merely verifies a transaction identifier—not the transaction or any of its details.

Apple ignores this fact by further contending that "Dill's 'transaction identifier' represents the financial transaction, as Dill explicitly states (and the Board found) that the 'transaction identifier' is "assign[ed]' to the 'transaction' as a whole." RB34-35 (citing Appx2942 ¶105 and Appx0064). However, contrary to Apple's statement, nothing in those citations indicates the transaction identifier represents the "transaction as a whole." In fact, Apple's argument boils down to nothing more

than suggesting that the verification of a person's identifier (*e.g.*, name or account number) is the same as an audit of their bank account or tax returns. Even if Apple's argument that verification of a transaction identifier is "official" and is an "examination," Apple must show more than the verification of some identifier associated with a transaction. Even under the Board's and Apple's incorrectly truncated construction, Apple must show there is a verification of "financial transactions" and not just numbers that identify that transaction but verify nothing about it.

### A. Fintiv's Arguments on Appeal Are Not Forfeited

Apple's favorite complaint about Fintiv's positions seems to be that its arguments are forfeited. RB35-36. But forfeiture, and its related legal theory of waiver,[2] always allow the patent owner "to meet the grounds of rejection." *See Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919, 924-925 (Fed. Cir. 2019). This is especially true where, as here, the Board's decision raises a new claim construction and analysis that must be addressed on appeal. *See Conoco,* 460 F.3d at 1359 (reviewing term not argued below where "court explicitly construed the term *sua sponte* and applied that construction to the facts"). Furthermore, forfeiture and

[2] This Court has noted the difference between waiver and forfeiture but noted the terms have been used interchangeably at times. *See In re Google Tech. Holdings LLC*, 980 F.3d at 862.

waiver law do not require a word-for-word comparison of the arguments below, with the arguments in question. *See Harris*, 417 F.3d at 1251-52 (allowing arguments that shifted theories but related to the "same concept"). A patent owner is entitled to an opportunity to respond to arguments from a patent challenger or the underlying decision of the Board, as well as to clarify and elaborate on its original arguments. *See Chamberlain*, 944 F.3d at 924-25. In *Chamberlain*, for example, this Court rejected a waiver argument in which the patent owner responded to the patent challenger's criticisms of its claim construction that argued anew that the art identified "multiple activities." *Id.* This Court found that the patent owner was not barred from elaborating on and clarifying prior positions or responding to new arguments. *Id.*

Here, Fintiv's arguments in this appeal address the same issues argued at the Board, *i.e.,* whether the verification of a transaction identifier in Dill qualifies as "auditing financial transactions" required by the claim. Apple takes issue with the fact that the arguments below "revolved around Dill's purported failure to disclose 'retrospective' examination." RB36. But, that makes sense as that was Fintiv's asserted claim construction, and Apple supplied no claim construction. Appx0016-17. Because the Board adopted its own construction in its FWD, Fintiv has every right to address it now on appeal and demonstrate why the Board erred in its analysis and why the Board lacked substantial evidence under that construction. *See*

*Chamberlain*, 919 F.3d at 924-25. Indeed, Fintiv's argument in opening (as here) is that there is no evidence to suggest the transaction was verified or officially examined under the Board's new construction.

Yet, inexplicably, Apple argues that "Fintiv failed to contest below that Dill's verification of a 'transaction identifier' … disclosed verification of the transaction itself. RB36. But the converse is actually the case. Indeed, Fintiv argued that Apple failed to meet its own burden to show that the verification of the "transaction identifier" of a transfer is the "transaction" required by the claims:

> Dill's disclosure of a transaction identifier "to determine delivery of the transfer" fails to teach that Dill is operable to audit a financial transaction, as claimed. … At most, Dill teaches a transaction identifier that is used <u>*prospectively*</u> to determine the recipient of the funds transfer prior to the transferring of the funds. … Dill is wholly silent with regard to any identifier that is used after the transfer of funds from the sender 105 to the recipient 110 is completed.

Appx0685 (PO Response) (emphasis in original).

> Dill's disclosure of a transaction identifier "to determine delivery of the transfer" fails to teach that Dill is operable to <u>*audit*</u> a financial transaction, as claimed. … Petitioner has failed to articulate any "plain and ordinary" definition for "auditing a financial transaction" that would be met simply by Dill's use of a transaction identifier "to determine delivery of the transfer."

Appx0767 (Sur-Reply) (emphasis in original).

Apple further contends that Fintiv's arguments differentiating Dill based on the "executing" and multiple "transactions" requirement does not escape waiver and forfeiture. RB35-36. Yet, pointing to new portions of the claim language to clarify

a position in an argument is not forfeiture of that argument. *See Chamberlain,* 944 F.3d at 924-25. Here, Fintiv merely notes positions in the claims and facts presented to the extent they conflict with the Board's position that the verification of a transaction identifier is the same as an "official examination of financial transactions" as required anew in its decision. Appx0019. Indeed, Fintiv explicitly argued in opening that the Board's focus on the transaction identifier was not supported by its new claim construction when compared to other portions of the claims.

> Thus, using a transaction identifier to determine who is the recipient of a transfer and which delivery option to apply in a transfer is not an examination or verification of that transfer or transaction. Again, it is simply determining what rule to apply in order to execute a transaction—not audit or "official examination" of that transaction.

BB29-30.

> There is no audit or official examination of the records of books of accounts or the financial transactions in those accounts as part of the official examination that define an actual audit. To be sure, Dill makes no mention of using the transaction identifier after the transaction is completed and there is no indication in Dill that the transaction identifier is used or maintained in any record or books of account for the financial transactions.
>
> This is significant because even the Board's definition of the claim term requires the "auditing" be an "official examination of financial transactions" in the plural.

BB30-31.

Fintiv is entitled to point out how the Board erred in its analysis and how there is not substantial evidence to support Board determinations not argued by either

party below. Because Fintiv seeks to correct the Boards new analysis, Apple cannot properly argue forfeiture now on determinations Fintiv never had an opportunity to address in the first place—the Board's application of the facts to its new construction. *See Interactive Gift Express*, 256 F.3d at 1345 (noting exception to waiver where "the appellant had no opportunity to raise the objection at the district court level").

### B. Apple Fails to Show Substantial Evidence that Dill Meets the "Auditing Financial Transactions" Limitation.

Setting aside forfeiture, Apple's further assertion, that substantial evidence exists to support the finding that Dill describes "auditing," is flawed. First, Apple does not address and does not dispute that there is no expert evidence or explanation of how the verification of a transaction identifier or the underlying identification of senders, receivers, or delivery rules to complete a transfer is the claimed verification or examination of the transaction, as opposed to part of the execution of the transaction. BB at 27-28. Instead, Apple mistakenly contends that the purported execution and auditing functions it extracts from Dill are separate functions that use the transaction identifier in different ways. RB37-38. For execution, Apple contends the transaction identifier is used to "deliver the funds," while for auditing Apple contends the transaction identifier is used to verify the transaction. However, this reasoning is circular and not supported by the evidence.

The Board relied exclusively on Dill paragraph 41 to support the conclusion that Dill verifies the transaction with a transaction identifier. Appx0064 (citing Appx2934-2935). But, paragraph 41 only says that the ***transaction identifier*** is verified, not the transaction. The Board never indicates that the transaction itself is verified, and the Board does not explain how it makes that leap from verifying the identifier to verifying the transaction itself. Instead, paragraphs 41 and 105 of Dill make plain that the verification of the transaction identifier is made in order to execute the transaction by delivering the funds. In paragraph 41, the system verifies the transaction identifier in order to obtain recipient information that is then used to facilitate the money transfer. Appx2934-2935 ¶¶41-43. In paragraph 105, the identifier is used to determine delivery rules for executing the transaction. Appx2942. Thus, Dill's use of the identifier to determine who to deliver the money transfer to and how to do it refers to the "delivery" of a transaction that Apple confirms refers to executing and not auditing. RB37-38. There is no explanation by Apple or the Board how the process for delivering a transaction is also an audit of that transaction.

Apple cites to its expert Dr. Houh as providing evidence that the disclosures in paragraphs 41 and 105 of Dill teach auditing through verification of the transaction identifier. But this testimony simply regurgitates passages of Dill and concludes, without support, that the transaction identifier verification is "auditing."

Appx2814-2815 ¶97. Apple's expert opines that the audit is performed "by means of a unique identifier and verifying related records," but there is no indication what other "records" are supposedly verified. In paragraph 41, the transaction identifier is verified, which leads to the receipt of a recipient identifier, but there is no disclosure of other records that are verified as the expert opines, making Dr. Houh's opinion unsupported by Dill. Such bald, unsupported conclusions by an expert are not substantial evidence to support the Board's conclusion. *See Sanofi-Aventis Deutschland GmbH v. Mylan Pharm. Inc.*, 66 F.4th 1373, 1379 (Fed. Cir. 2023) ("[P]etitioner's conclusory statements could not satisfy the petitioner's burden of demonstrating a motivation to combine."). Just as in *Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1299 (Fed. Cir. 2010) the prior art does not disclose what Apple claims, and there is no substantial expert testimony to fill the gap.

Finally, Apple contends that the Board's decision is correct because there is no claim requirement an audit be conducted on completed transactions. RB39-40. But this argument makes little sense. The claims themselves require "auditing financial transactions" not "auditing *possible* financial transactions." While there is no doubt a system can examine various parts of a potential transaction, such as in Dill that examines the transaction identifier to determine if the transaction can go forward, this is not the same as examination of the transaction details for purposes of an audit. Indeed, an audit reviews the "accuracy of the books" and determines if

the "transactions entered in the books of original entry are correct or not" according to the extrinsic sources relied upon by the Board. Appx3826. To boil the claimed "auditing financial transactions" process down to nothing more than ***any examination*** of ***any part*** of ***any potential transfer*** that may or may not become a financial transaction, would make the "auditing financial transactions" limitation meaningless and nothing more than any rudimentary examination of any small part of a transfer regardless of whether it related to books, records, accounts, or their accuracy. Indeed, it would even read out the requirement to examine "transactions" as opposed to one part of a singular transaction.

## III. Dill Does Not Disclose a "Deposit Transaction"

Apple fails to establish that Dill discloses the claimed deposit transaction to a subscriber's account. Apple's fundamental argument in this regard turns on the Board's interpretation of Dill paragraph 52 that says "any given entity and/or device associated with that entity can alternately act as sender or recipient." Appx2936. RB42. The Board held that this statement in Dill suggests a "deposit transaction" as claimed because the sender and recipient could be "the same party in the same transaction." Appx0054. However, the Board's decision directly conflicts with its additional finding that "Dill makes clear that its use of the terms sender and recipient [in paragraph 52] when describing a transaction is only limited temporally—not by transaction type." Appx0052-0053 (citing Appx2936). In other words, the Board

nonsensically held that the same person could be both the sender and recipient of a transfer in the same transaction because they would not be both sender and recipient in that transaction at the same time. But a single transaction where the sender and recipient are the same person must necessarily occur at the same time. A person that sends with their right hand and receives with their left, necessarily does so at the same time.

Neither the Board nor Apple offer any explanation for the mental gymnastics required to show how the same person can be both the sender and recipient to the same financial transaction but are not also considered sending and receiving that single transaction at the same time. Senders and recipients of a single transaction are necessarily the sender and recipient of that transaction at the same time. Indeed, it is impossible to imagine a scenario where the temporally-limited sender and recipient the Board found in paragraph 52 would apply if it does not apply to a sender and recipient of the same transaction. In other words, if the sender and recipient do not have to be different entities in the same transaction, then there is no transaction where they would ever have to be different entities and the temporal limitations of paragraph 52 would be meaningless.

To be sure, neither the Board nor Apple ever offer a scenario of how the sender and recipient identification could ever be temporally limited if not in the same transaction. Apple presented expert testimony from Dr. Houh that merely quotes

paragraph 52 of Dill but offers nothing more to explain how the sender and recipient can be limited temporally but not limited in the same transaction that necessarily occurs at the same time. RB44 (citing Appx2839 ¶132). Apple's tortured attempts that read out any temporal limitation as required by paragraph 52 should be rejected.

In its response, Apple further claims that Fintiv's argument that the combination of the fund withholding system in paragraph 101 and the money order deposit referenced in the background of paragraph 3 was unsupported is forfeit. RB46. This is incorrect. As Fintiv noted in Sur-Reply, Apple's expert opined that "Dill teaches that a sender deposits funds in her account" and referenced the combination of paragraphs 3 and 101 for support of this statement. Appx0754-0755. However, Apple's expert made no such conclusions and Apple's failure to present any such analysis of why these should be combined is proper here. Apple failed to present any testimony or analysis to support its conclusion that the references in Dill can be combined to conclude that a sender deposits funds into their own account and it cannot shift the burden to disprove that fact to Fintiv. *See FanDuel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1341 (Fed. Cir. 2020) ("[I]t is inappropriate to shift the burden to the patentee after institution to prove that the patent is patentable.").

Apple's citation to *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331 (Fed. Cir. 2016) is inapposite. In *Blue Calypso*, this Court reviewed the Board

determination that a reference anticipated several patent claims directed at advertising. The Board found that even though the reference did not explicitly disclose the combination of a "campaigns" and "refer a friend campaign" tools together, the specification indicated that that the "various disclosed features of Paul's invention 'may be produced in a single computer system having . . . *elements or means combining the performance of any of the functions or steps disclosed or claimed…*". *Id.* at 1343 (emphasis in original). There is no such evidence presented here that explains how or why a POSA would combine the Dill reference disclosures to a fund withholding system of paragraph 101 to the unrelated money order system reference in the background paragraph 3. Appx2931, Appx2942. Ultimately, the Board simply cited the two disclosures together in its FWD, but offered no explanation how or why they should be read together. Appx0053. Accordingly, it is proper for Fintiv to question the Board's citation and missing support for whatever theory the Board is attempting to support.

Apple has not presented any sufficient evidence or even examples to suggest that how senders and recipients can be the same temporal transaction and it fails to establish sufficient evidence to support other findings of the Board that pieces together various parts of Dill. Accordingly, there is not substantial evidence that Dill discloses the required deposit transaction limitations of the '386 patent.

## CONCLUSION

Because the Board improperly construed and applied the "auditing financial transactions" limitation and did not have sufficient evidence to establish that Dill discloses a deposit transaction as required by the claims, its decision that the '386 patent was unpatentable due to obviousness should be reversed.

September 26, 2024

Respectfully submitted,

*Meredith Martin Addy*

Meredith Martin Addy
Charles A. Pannell, III
**ADDYHART P.C.**
10 Glenlake Parkway
Suite 130
Atlanta, Georgia 30328
312.320.4200
meredith@addyhart.com
cpannell@addyhart.com

Benjamin M. Cappel
**ADDYHART P.C.**
401 N. Michigan Ave
Suite 1200-1
Chicago, Illinois 60611
732.991.7285
benjamin@addyhart.com

Caren A. Yusem
**ADDYHART P.C.**
1101 Pennsylvania Ave., N.W.
Suite 300
Washington, DC 20004
312.804.4885
caren@addyhart.com

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John W. Downing
Heather S. Kim
ThucMinh Nguyen
**Kasowitz Benson Torres LLP**
333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA 94065
650.453.5170
jwaldrop@kasowitz.com
djones@kasowitz.com
mbarber@kasowitz.com
jdowning@kasowitz.com
hkim@kasowitz.com
tnguyen@kasowtiz.com

Jeceaca An
**Kasowitz Benson Torres LLP**
1633 Broadway
New York, NY 10019
212.506.1808
jan@kasowitz.com

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATIONS**

***Fintiv, Inc. v Apple Inc.***

No. 24-1345

This brief complies with the relevant type-volume limitation of the Federal Rule of Appellate Procedure and Federal Circuit Rules because it has been prepared using a proportionally-spaced typeface and includes 6164 words.

Dated: September 26, 2024

By: /s/ *Meredith Martin Addy*
Meredith Martin Addy